

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

FILED MAR 24 '25 PM 12:58 USI

CRIMINAL INVESTIGATION

May 19, 2023

MEMORANDUM FOR LABOR/EMPLOYEE RELATIONS & NEGOTIATIONS

FROM:          Tara Sullivan
               CI Disciplinary Board Chair

SUBJECT:       1203(b)(9) Fact Finding Memorandum
               ALERTS 2023-9123

On May 17, 2023, the CI Disciplinary Board reviewed the evidence file for Investigative Analyst (IA), Jennifer Butler, regarding a potential 1203(b)(9) violation.

IA Butler has been in her role with Criminal Investigation since September 19, 2016. The employee performed tax administrative duties in her position during the time period in question, as well as her current position. IA Butler is currently rated as Exceeds Fully Successful on her most recent rating of record. Of note in this case, the employee claims a 100% service-connected disability rating.

The evidence shows that the employee failed to accurately file her 2018 Federal income tax return. As a result of an underreporter contact, the employee was assessed $2,583 in additional tax, stemming from a 1099-R, retirement distribution from DFAS, which was classified as taxable. Due to the additional taxable income, the employee's earned income credit was removed in the amount of $1,532. The total balance was $5,116.07, which included $486.07 in interest and penalties. No accuracy related civil penalties for negligence or substantial understatement were assessed. The account was considered full paid on October 18, 2021.

Fact finding in this case was limited due to the employee's current AWOL status. However, the explanation the employee did provide was that she believes the entire distribution should be classified as non-taxable, due to her 100% service-connected disability rating. The employee has contacted DFAS for corrected records, so that she may potentially amend her return and reclaim and taxes previously paid. The employee also indicated that she followed Publication 596 in forming the basis of what to include as taxable or not taxable for the tax year in question.

In considering the file in its entirety, I find the employee's response to be credible. The employee has no prior discipline and has had no prior or subsequent tax compliance issues. In this case, no other years were referred for compliance, demonstrating that this issue was isolated solely to the tax year in question. The employee has not demonstrated any intent to violate their known legal duty, therefore, the employee is **not willful** with regards to the potential 1203(b)(9) outlined above.

| | |
|---|---|
| **From:** | Sullivan Tara |
| **To:** | Jones Alicen J |
| **Cc:** | *CI Disciplinary Board; Kressin Bret R |
| **Subject:** | ALERTS 2023-9123 |
| **Date:** | Friday, May 19, 2023 1:09:08 PM |
| **Attachments:** | 2023-9123 FF Memo.docx |
| | 01. 2023-9123 ERBS (002).docx |
| | 1203 FF file.pdf |

Alicen,

Attached is the 1203 Fact Finding Memo and documentation with a Not Willful determination for Jennifer Butler.

Once the employee clears 1203, let me know. Thanks.

From:          Butler, Jennifer
To:            *HCO ETC CIN
Subject:       Butler 2018 Tax Account
Date:          Friday, February 10, 2023 2:01:00 PM
Attachments:   CRSC Letter.pdf

Good Afternoon,

I over paid my taxes to try be in compliance and avoid this issue. My 1099 from DFAS is incorrect
am a 100% disabled veteran with injuries cause from Burn Pits. Publication 525 says you don't have
to include disability payments in income if results directly from armed conflict or caused by an
instrument of war. I received $30,000 back-payment last year and I didn't file amended taxes to
correct the overpayment because of the back-log caused by Covid-19 and trying to stay in
compliance. I am also in the process to have DFAS correct my status.

V/r,

Jennifer Butler
Investigative Analyst, IRS-CI
Atlanta Field Office
Desk 251-341-5930
Cell 251-222-4556



DEPARTMENT OF THE ARMY
U.S. ARMY ... HUMAN RESOURCES COMMAND
1600 SPEARHEAD DIVISION AVENUE ... FORT KNOX, KENTUCKY 40122-5408

December 14, 2021

Combat-Related Special Compensation

MAJ (RET) J███████ B███ 

Original Application Date: December 1, 2021

Subject: Army CRSC Decision Letter, (Claim #: 388561)

Dear MAJ B████ (RET):

We have reviewed your claim for Combat-Related Special Compensation (CRSC) and have approved your claim in accordance with current program guidance. A copy of this decision letter will be sent to the Defense Finance and Accounting Service (DFAS) for payment calculation and processing. Payment questions should be referred to DFAS at 1-800-321-1080.

## Verified as Combat-Related:

| VASRD | Description | Combat Code | % | CRSC Effective Date | Justification /Comments |
|-------|-------------|-------------|-----|---------------------|-------------------------|
| 6602 | Moderate Persistent Asthma With Pulmonary Apical Pleural Scars | IN | 100% | DEC 15 | Verified disability as combat-related due to an Instrumentality of War |
| 9411 | Post-Traumatic Stress Disorder | AC | 50% | DEC 15 | This condition is granted due to your combat award |
| 6260 | Tinnitus | IN | 10% | DEC 15 | This condition is granted due to your combat award |
| 6513 | Chronic Sinusitis | IN | 10% | DEC 15 | Verified disability as combat-related due to an Instrumentality of War |
| 6522 | Allergic Rhinitis | IN | 0% | DEC 15 | Verified disability as combat-related due to an Instrumentality of War |

## Total Combined Percentage:

| | | |
|---|---|---|
| Total Combat-Related Disability | 100% | DEC 15 |

# Federal Electronic Filing Instructions

**Tax Year 2021**

**You are responsible for confirming the status of your electronically filed amended return.** You can confirm the status of your return by going to https://www.taxact.com/ef/efile-center. You will need to enter the primary social security number and last name on the return along with your ZIP code.

**Self Select PIN:** You do not need to mail any paper signature forms to the IRS. Your amended return has been successfully filed once you receive your acceptance from the IRS.

**Refund:**
You have elected to receive your refund of $5,541 via paper check.

You can start checking the status of your refund within 24 hours of e-filing at the IRS website https://www.irs.gov/Refunds under Where's My Refund. The IRS issues most refunds in less than 21 days. Updates to refund status are made once daily - usually at night.

Form **1040-X**

(Rev. July 2021)

Department of the Treasury-Internal Revenue Service

## Amended U.S. Individual Income Tax Return

▶ Use this revision to amend 2019 or later tax returns.

▶ Go to *www.irs.gov/Form1040X* for instructions and the latest information.

OMB No. 1545-0074

This return is for calendar year (enter year) **2021**   or fiscal year (month and year ended)

| Your first name and middle initial | Last name | | Your social security number |
|---|---|---|---|
| J▓▓▓ | | | |
| If joint return, spouse's first name and middle initial | Last name | | Spouse's social security number |

| Current home address (number and street). If you have a P.O. box, see instructions. | | Apt. no. | Your phone number |
|---|---|---|---|
| ▓▓▓▓ | | | |

City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below. See instructions.

| Foreign country name | Foreign province/state/county | Foreign postal code |
|---|---|---|

**Amended return filing status.** You **must** check one box even if you are not changing your filing status. **Caution:** In general, you can't change your filing status from married filing jointly to married filing separately after the return due date.

☐ Single   ☐ Married filing jointly   ☐ Married filing separately (MFS)   ☒ Head of household (HOH)   ☐ Qualifying widow(er) (QW)

If you checked the MFS box, enter the name of your spouse. If you checked the HOH or QW box, enter the child's name if the qualifying person is a child but not your dependent ▶

Enter on lines 1 through 23, columns A through C, the amounts for the return year entered above.
Use Part III on page 2 to explain any changes.

| | | | A. Original amount reported or as previously adjusted (see instructions) | B. Net change - amount of increase or (decrease) — explain in Part III | C. Correct amount |
|---|---|---|---|---|---|
| **Income and Deductions** | | | | | |
| 1 | Adjusted gross income. If a net operating loss (NOL) carryback is included, check here ▶ ☐ | 1 | 97,023. | -26,403. | 70,620. |
| 2 | Itemized deductions or standard deduction. | 2 | 19,100. | | 19,100. |
| 3 | Subtract line 2 from line 1 | 3 | 77,923. | -26,403. | 51,520. |
| 4a | Reserved for future use | 4a | | | |
| b | Qualified business income deduction | 4b | | | |
| 5 | Taxable income. Subtract line 4b from line 3. If the result is zero or less, enter -0- | 5 | 77,923. | -26,403. | 51,520. |
| **Tax Liability** | | | | | |
| 6 | Tax. Enter method(s) used to figure tax (see instructions): **TABLE** | 6 | 11,440. | -5,541. | 5,899. |
| 7 | Nonrefundable credits. If a general business credit carryback is included, check here ▶ ☐ | 7 | 500. | | 500. |
| 8 | Subtract line 7 from line 6. If the result is zero or less, enter -0- | 8 | 10,940. | -5,541. | 5,399. |
| 9 | Reserved for future use | 9 | | | |
| 10 | Other taxes | 10 | 1,985. | | 1,985. |
| 11 | Total tax. Add lines 8 and 10 | 11 | 12,925. | -5,541. | 7,384. |
| **Payments** | | | | | |
| 12 | Federal income tax withheld and excess social security and tier 1 RRTA tax withheld. **(If changing, see instructions.)** | 12 | 4,381. | | 4,381. |
| 13 | Estimated tax payments, including amount applied from prior year's return | 13 | | | |
| 14 | Earned income credit (EIC) | 14 | | | |
| 15 | Refundable credits from: ☒ Schedule 8812 Form(s) ☐ 2439 ☐ 4136 ☐ 8863 ☐ 8885 ☐ 8962 or ☐ other (specify): | 15 | 1,800. | | 1,800. |
| 16 | Total amount paid with request for extension of time to file, tax paid with original return, and additional tax paid after return was filed | 16 | | | 6,744. |
| 17 | Total payments. Add lines 12 through 15, column C, and line 16 | 17 | | | 12,925. |
| **Refund or Amount You Owe** | | | | | |
| 18 | Overpayment, if any, as shown on original return or as previously adjusted by the IRS | 18 | | | |
| 19 | Subtract line 18 from line 17. (If less than zero, see instructions.) | 19 | | | 12,925. |
| 20 | **Amount you owe.** If line 11, column C, is more than line 19, enter the difference | 20 | | | |
| 21 | If line 11, column C, is less than line 19, enter the difference. This is the amount **overpaid** on this return | 21 | | | 5,541. |
| 22 | Amount of line 21 you want **refunded to you** | 22 | | | 5,541. |
| 23 | Amount of line 21 you want **applied to your** (enter year): **2022** estimated tax | 23 | | | |

Complete and sign this form on page 2.

For Paperwork Reduction Act Notice, see separate instructions.

1040-X

Form 1040-X (Rev. 7-2021)  ▓▓▓▓▓▓  ▓▓▓▓  ▓▓▓▓▓▓▓▓▓  Page **2**

| Part I | **Dependents** | | | | | A. Original number of dependents reported or as previously adjusted | B. Net change — amount of increase or (decrease) | C. Correct number |
|---|---|---|---|---|---|---|---|---|
| Complete this part to change any information relating to your dependents. This would include a change in the number of dependents. Enter the information for the return year entered at the top of page 1. | | | | | | | | |
| 24 | Reserved for future use . . . . . . . . . . . . . . . . . . . . . | | | | 24 | | | |
| 25 | Your dependent children who lived with you . . . . . . . . . . . . . | | | | 25 | 2 | | 2 |
| 26 | Your dependent children who didn't live with you due to divorce or separation . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | 26 | | | |
| 27 | Other dependents . . . . . . . . . . . . . . . . . . . . . . . . | | | | 27 | | | |
| 28 | Reserved for future use . . . . . . . . . . . . . . . . . . . . . | | | | 28 | | | |
| 29 | Reserved for future use . . . . . . . . . . . . . . . . . . . . . | | | | 29 | | | |
| 30 | List **ALL** dependents (children and others) claimed on this amended return. | | | | | | | |

**Dependents** (see instructions):

If more than four dependents, see instructions and check here ▶ ☐

| (a) First name | Last name | (b) Social security number | (c) Relationship to you | (d) Check if qualifies for (see instructions): | |
|---|---|---|---|---|---|
| | | | | Child tax credit | Credit for other dependents |
| Z▓▓ B▓ | | ▓▓▓▓▓▓▓▓ | Son | ☐ | ☒ |
| M▓ A▓ | | ▓▓▓▓▓▓▓▓ | Son | ☒ | ☐ |

| Part II | **Presidential Election Campaign Fund** (for the return year entered at the top of page 1) |
|---|---|

Checking below won't increase your tax or reduce your refund.

☐ Check here if you didn't previously want $3 to go to the fund, but now do.

☐ Check here if this is a joint return and your spouse did not previously want $3 to go to the fund, but now does.

| Part III | **Explanation of Changes.** In the space provided below, tell us why you are filing Form 1040-X. |
|---|---|

▶ Attach any supporting documents and new or changed forms and schedules.

Removed US Military Retired 1099R disability retirement pay. I was retired from US Army on May 19, 2015. At retirement my disability was not classified as a resulted from combat. The box was checked: No. On December 14, 2021 I received my Army CRSC Decision Letter, (Claim #: 388561). My disability was reclassified as verified disability as combat-related due to an Instrumentality of War. Total Combat-Related Disability: 100% Dec 15, 2015. DFAS refused to update the 1099R to nontaxable said I needed to get new Retirement Orders and file an amended return with IRS till I can get new Retirement Orders. I applied for a correction to my retirement orders.

**Remember to keep a copy of this form for your records.**

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return, and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information about which the preparer has any knowledge.

▶ _____  Date _____  Your occupation  Investigative Analy
Your signature

▶ _____  Date _____  Spouse's occupation
Spouse's signature. If a joint return, **both** must sign.

| **Paid Preparer Use Only** | Print/Type preparer's name | Preparer's signature | Date | Check if ☐ self-employed | PTIN |
|---|---|---|---|---|---|
| | Firm's name ▶ | | | Firm's EIN ▶ | |
| | Firm's address ▶ | | | Phone no. | |

For forms and publications, visit *www.irs.gov/Forms.*

Form **1040-X** (Rev. 7-2021)

UYA



**Internal Revenue Service**
United States Department of the Treasury

This Product Contains Sensitive Taxpayer Data

```
                                      Request Date: 03-23-2025
                                      Response Date: 03-23-2025
                                      Tracking Number: 107696421006
```

Account Transcript

FORM NUMBER: 1040          TAX PERIOD: Dec. 31, 2018

TAXPAYER IDENTIFICATION NUMBER:          XXX-XX-7317

JENN R BUTL
2411 W

--- ANY MINUS SIGN SHOWN BELOW SIGNIFIES A CREDIT AMOUNT ---

```
ACCOUNT BALANCE:          0.00
ACCRUED INTEREST:         0.00          AS OF: Apr. 07, 2025
ACCRUED PENALTY:          0.00          AS OF: Apr. 07, 2025

ACCOUNT BALANCE
  PLUS ACCRUALS
  (this is not a
  payoff amount):        0.00
```

** INFORMATION FROM THE RETURN OR AS ADJUSTED **

```
EXEMPTIONS:              03
FILING STATUS:           Head of Household
ADJUSTED GROSS
  INCOME:                62,602.00
TAXABLE INCOME:          44,602.00
TAX PER RETURN:          0.00
SE TAXABLE INCOME
  TAXPAYER:              0.00
SE TAXABLE INCOME
  SPOUSE:                0.00
TOTAL SELF
  EMPLOYMENT TAX:        0.00
```

```
RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER)  Apr. 15, 2019
PROCESSING DATE                                               Apr. 15, 2019
```

TRANSACTIONS

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|------|----------------------------|-------|------|--------|
| 150 | Tax return filed<br>76211-483-04272-9 | 20191305 | 04-15-2019 | $0.00 |
| 806 | W-2 or 1099 withholding | | 04-15-2019 | -$2,032.00 |
| 766 | Credit to your account | | 04-15-2019 | -$515.00 |
| 768 | Earned income credit | | 04-15-2019 | -$1,532.00 |

| 896 | Overpayment Credit Offset | | 04-15-2019 | $104.00 |
|-----|---------------------------|--|------------|---------|
| 846 | Refund issued | | 04-03-2019 | $3,975.00 |
| 922 | Review of unreported income | | 09-05-2021 | $0.00 |
| 767 | Reduced or removed credit to your account | | 04-15-2019 | $515.00 |
| 765 | Reduced or removed earned income credit | | 04-15-2019 | $1,532.00 |
| 290 | Additional tax assessed 07254-645-65787-1 | 20213605 | 09-27-2021 | $2,583.00 |
| 196 | Interest charged for late payment | 20213605 | 09-27-2021 | $486.07 |
| 971 | Notice issued | | 09-27-2021 | $0.00 |
| 640 | Advance payment of tax owed | | 10-18-2021 | -$5,116.07 |

This Product Contains Sensitive Taxpayer Data

ITA

3/18/24, 2:04 PM



**Interactive Tax Assistant (ITA)**

# Answers to Your Questions About Income

## Is my pension or annuity payment taxable?

The portion of your disability payments relating to injuries resulting directly from a terrorist attack or military action is not taxable.

However, you must include in your income any amounts that you received that you would have received in retirement had you not become disabled as a result of a terrorist attack or military action. Accordingly, you must include in your income any payments you receive from a 401(k), pension, or other retirement plan to the extent that you would have received the amount at the same or later time regardless of whether you had become disabled.

For additional assistance, please refer to Publication 525, Taxable and Nontaxable Income; Publication 907, Tax Highlights for Persons with Disabilities; and Publication 3920, Tax Relief for Victims of Terrorist Attacks.

### Disclaimer

The conclusions above are based on information provided by you in response to the questions you answered. This does not constitute written advice in response to a specific written request of the taxpayer within the meaning of section 6404(' Internal Revenue Code.

**Review Screen**

What tax year are you asking about? **2023**

Was the distribution from a qualified employer plan (including 403(b) or governmental 457(b) plans) or a nonqualified annuity? **Qualified employer plan**

Was the distribution from a designated Roth account? **No**

Was the distribution a corrective distribution of excess contributions? **No**

Was the distribution from a disability pension? **Yes**

Are you a disabled police officer or firefighter? **No**

Was the payment received for injuries resulting directly from a terrorist attack or military action? **Yes**

Print

ITA Home



Document Number: 2692633    e-Appeal Submission 22/23/22/2024 06:31 PM ET    MSRB Page 434    Exhibit G

and up to three state returns for free through the Military OneSource website. The service also includes tax consultants available by phone to answer tax questions related to deployment, multi-state filing, and combat pay. They also share information on military-specific and civilian tax deductions and credits.

Military OneSource is available 24/7 at 800-342-9647 and online at MilitaryOneSource.mil ☐.

## Special Tax Considerations

Veterans may be eligible to claim a federal tax refund based on:

- An increase in the Veteran's percentage of disability from the Department of Veterans Affairs (which may include a retroactive determination) **or**
- The combat-disabled Veteran applying for, and being granted, Combat-Related Special Compensation, after an award for Concurrent Retirement and Disability.

Special tax considerations for disabled Veterans occasionally result in a need for amended returns.

## Combat-Injured Veterans Tax Fairness Act of 2016

The Combat-Injured Veterans Tax Fairness Act of 2016, went into effect in 2017. Under this federal law, Veterans who suffer combat-related injuries and are separated from the military are not to be taxed on the one-time lump sum disability severance payment they receive from the Department of Defense. This law instructs DoD to identify Veterans who were taxed in order for them to file an amended return to receive their refund. Go to Combat-Injured Veterans Tax Fairness Act Claim Information for more details.

## VA Disability Benefits

Disability benefits received from the VA should not be included in your gross income. Some of the payments which are considered disability benefits include:

- Disability compensation and pension payments for disabilities paid either to Veterans or their families,
- Grants for homes designed for wheelchair living,
- Grants for motor vehicles for Veterans who lost their sight or the use of their limbs, or
- Benefits under a dependent-care assistance program.

If you are a military retiree and receive your disability benefits from the VA, see IRS Publication 525 for more information.

## Programs for Homeless Veterans

VA's specialized programs for homeless Veterans serve hundreds of thousands of homeless and at-risk Veterans each year. Independently and in collaboration with federal and community partners, VA programs provide Veterans with housing solutions, employment opportunities, health care, justice- and reentry-related services and more. Learn more about these programs at VA Programs for At-Risk Veterans and Their Families ☐.

Case 1:25-cv-00115-KD-N    Doc# 1-1    Filed 03/24/25    Page 13 of 56    PageID# 19
3/18/24, 1:45 PM                    Special tax considerations for veterans | Internal Revenue Service



# Special tax considerations for veterans

## Disabled veterans may be eligible to claim a federal tax refund based on:

- an increase in the veteran's percentage of disability from the Department of Veterans Affairs (which may include a retroactive determination) **or**
- the combat-disabled veteran applying for, and being granted, Combat-Related Special Compensation, after an award for Concurrent Retirement and Disability.

To do so, the disabled veteran will need to file the amended return, Form 1040-X, Amended U.S. Individual Income Tax Return, to correct a previously filed Form 1040, 1040-A or 1040-EZ. An amended return can be e-filed or filed by paper for most returns.  For tax years 2019 and later, a paper filed original return can be amended electronically or by paper. Disabled veterans should include all documents from the Department of Veterans Affairs and any information received from Defense Finance and Accounting Services explaining proper tax treatment for the current year.

Please note: It is only in the year of the Department of Veterans Affairs reassessment of disability percentage (including any impacted retroactive year) or the year that the CRSC is initially granted or adjusted that the veteran may need to file amended returns.

Under normal circumstances, the Form 1099-R issued to the veteran by Defense Finance and Accounting Services correctly reflects the taxable portion of compensation received. No amended returns would be required, since it has already been adjusted for any non-taxable awards.

If needed, veterans should seek assistance from a competent tax professional before filing amended returns based on a disability determination. Refund claims based on an incorrect interpretation of the tax law could subject the veteran to interest and/or penalty charges.

## Other resources

- Information for veterans with disabilities
- Publication 525, Taxable and Non-Taxable Income
- Publication 907, Tax Highlights for Persons with Disabilities

https://www.irs.gov/individuals/military/special-tax-considerations-for-veterans    Document Number: 2692633    Appeal Submission 14    03/22/2024 06:31 PM ET    MSPB Page 426 Exhibit G

# Exceptions to the Three-Year Audit Rule

There are exceptions to the three-year federal rule on assessments and audits as well.

> The IRS has six years from the date you file a return to audit it and to assess additional tax if you omit income that's more than 25% of the income you reported on the return.

> The IRS also has six years to audit your tax return and assess additional tax on income related to undisclosed foreign financial assets if the omitted income is more than $5,000.

> The statute of limitations on audits and assessing additional tax can remain open indefinitely if you file a false or fraudulent tax return. [5]

# Taxes?

The IRS has a set collection period of 10 years. This is the length of time it's given to pursue any tax payments that have not been made. The 10-year deadline for collecting outstanding debt is measured from the day a tax liability has been finalized. This can happen in a number of ways. Yc liability might be considered finalized because:

Document Number: 2692633    e-Appeal Submission 03/22/2024 06:31 PM ET    MSPB Page 418    Exhibit G

CI-2023-00-005-01



CRIMINAL INVESTIGATION

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, DC 20224

January 6, 2023

MEMORANDUM FOR ALL CRIMINAL INVESTIGATION EMPLOYEES

FROM:          James C. Lee  *James C. Lee*
               Chief, Criminal Investigation

SUBJECT:       Criminal Investigation (CI) Disciplinary Board (DB)

This memorandum is to provide notice of the procedural changes regarding designated types of misconduct for CI employees, as outlined in the DB Charter and revised CI Delegation Order No. 21, enclosed. This policy change is effective immediately.

The purpose of the DB is to centralize the process for imposing corrective actions for misconduct. Centralization will provide fair and consistent treatment of CI employees, while preserving the CI mission and promoting the efficiency of the Service.

This policy update applies to any open misconduct cases where a proposal letter has not yet been issued. The Employee Relations & Medical (ERM) Section will continue to work directly with CI managers on all CI employee relations cases (i.e., conduct, performance, grievances), including those going to the DB. The servicing ERM MPA will keep managers informed of actions concerning their assigned employees.

If you have any questions, please contact Cassie Myers, Section Chief, CI-HR CI-ERM.


cc:  HCO Office of HR Strategy & Policy and Compliance
     HCO Office of Labor/Employee Relations & Negotiations

Enclosures (2)

 **IRS:CI**

# Disciplinary Board Charter

**I.  ESTABLISHMENT OF A DISCIPLINARY BOARD AND DESIGNATED DECIDING OFFICIAL**

The Chief, Criminal Investigation (CI) has authorized the CI Disciplinary Board (DB) and Designated Deciding Official (DDO) as the principal body to address employee misconduct as described herein.

**II.  PURPOSE**

The purpose of the CI DB and DDO is to determine appropriate and consistent corrective action is taken with respect to the following types of cases:

| | |
|---|---|
| Firearms | Use of Force |
| GOV Misuse | Giglio |
| Lautenberg | GS-15/IR-01 |
| Criminal Misconduct | §1203(b)(1-10) |
| Substance Abuse | UNAX |
| Condition of Employment | |

Cases as determined by the Criminal Investigation (CI) Human Resource (HR) Director (e.g., difference of opinion on other types of misconduct between the Employee Relations and Medical (ERM) Section and proposing or deciding official, sensitive and high visibility cases, etc.).

Any case where the employee has two prior disciplinary actions that are a matter of record.

**III.  RESPONSIBILITIES**

The DB is responsible for:

- Reviewing and analyzing the documentation for cases
- Proposing appropriate penalties for misconduct

The DDO is responsible for:

- Serving as the Deciding Official for actions proposed by the DB

**IV.  ORGANIZATION**

The DB shall consist of the following permanent CI managers, at the sole discretion of the Chief, CI:

**Disciplinary Board Charter**

A. Voting Members:
1. Chair - Deputy Director, Strategy, Resource Administration and Leadership (REAL) - permanent member.
2. 1811 SES Member or SES-in-Waiting (**SIW**) - serving a two-year term and rotating out every odd numbered year.
3. Non 1811 SES or Senior Manager - serving a two-year term and rotating out every even numbered year.

**NOTE 1:** Alternates for voting members shall be appointed at the same time voting members are appointed. Use of DB alternates shall be rare. Alternates are permitted for advisory (non-voting members) as appropriate.

**NOTE 2:** The Deputy Director, Strategy, Resource, **Development & Controls,** shall serve as the alternate for the Chair.

B. Advisory Members (Non-voting members)
1. CI HR Technical Advisor
2. Section Chief, CI ERM

The DDO shall be the Executive Director, Strategy.

## V.    OPERATION/CONDUCTING BUSINESS

### Proposal Stage:

- The DB Chair shall:
  - Call meetings as needed to effectively carry out the purpose of the DB.
  - Transmit DB recommendations to the servicing LERN Office.
  - Serve as the Proposing Official for disciplinary and adverse actions.
  - Sign all non-disciplinary, lesser disciplinary (admonishments and reprimands) and probationary termination letters adjudicated by the DB.
- CI ERM shall be responsible for administrative operations.
- All voting members, or authorized alternates, must be in attendance to conduct business.
- The DB shall seek consensus on all actions. Absent consensus, the decision shall be that of the majority.

### Decision Stage:

- The DDO shall:
  - Serve as the deciding official for all proposals issued by the DB.
  - Receive written replies and/or hear oral replies.
  - Consult with the DB prior to mitigating a DB proposal or offering a settlement.

The Director, Strategy and Deputy Director, Strategy, REAL, shall review this Charter annually to make recommendation to the Chief, CI regarding updates.

**Disciplinary Board Charter**

Information received by the Disciplinary Board is confidential and may not be disclosed to anyone without an official need to know.

VI.    **Charter Approval**

The Chief, CI has reviewed and approves this charter.  Any changes must be approved by the Chief, CI.

*James C. Lee*

James C. Lee
Chief, Criminal Investigation

12/19/2022
Date

All members and newly appointed members shall sign upon appointment.

I have read this Charter.  I understand my responsibilities and agree to be bound by the terms of the Charter:

Jones Shea C
Digitally signed by Jones Shea C
Date: 2023.01.09 13:45:21 -05'00'

01/09/2023

Director, Strategy (DDO)                                Date

Sullivan Tara
Digitally signed by Sullivan Tara
Date: 2023.01.06 12:56:23 -08'00'

01/06/2023                05/30/2023

Deputy Director, Strategy, REAL (Chair)        Date            Departure Date

Carter Kareem A
Digitally signed by Carter Kareem A
Date: 2023.01.10 15:17:13 -05'00'

01/10/2023

1811 Member                                            Date

Cones Jennifer K
Digitally signed by Cones Jennifer K
Date: 2023.01.06 16:16:21 -06'00'

01/06/2023

Non-1811 Member                                        Date

Kull Sarah
Digitally signed by Kull Sarah
Date: 2023.01.06 15:33:51 -05'00'

01/06/2023

Alternate to DB Chair                                  Date

Darrell J. Waldon
Digitally signed by Darrell J. Waldon
Date: 2023.01.09 10:35:54 -05'00'

01/09/2023

Alternate to 1811 Member                               Date

Kimberly M. Silveria
Digitally signed by Kimberly M. Silveria
Date: 2023.01.10 16:10:55 -05'00'

01/10/2023

Alternate to Non-1811 Member                           Date

Bret R. Kressin
Digitally signed by Bret R. Kressin
Date: 2023.05.30 08:17:58 -07'00'

05/31/2023

Deputy Director, Strategy, REAL (Chair)        Date

ddd

### 9.1.4.25 (01/01/2023)
### Delegation Order No. 21

(1) **Authority to Address Employee Performance or Conduct Issues**

(2) **Authority 1:** To effect a non-disciplinary action, lesser disciplinary action, probationary termination, propose a disciplinary suspension, or propose an adverse action for cases involving:

| | |
|---|---|
| Firearms | Use of Force |
| GOV Misuse | Giglio |
| Lautenberg | GS-15/IR-01 |
| Criminal Misconduct | §1203(b)(1-10) |
| Substance Abuse | UNAX |
| Condition of Employment | |

Cases as determined by the Criminal Investigation (CI) Human Resource Director (e.g., difference of opinion on other types of misconduct between the Employee Relations and Medical Section and proposing or deciding official, sensitive and high visibility cases, etc.).

Any case where the employee has two prior disciplinary actions that are a matter of record.

(3) **Delegated to:** CI Disciplinary Board Chair.

(4) **Redelegation:** This authority may not be redelegated.

(5) **Authority 2:** To effect a disciplinary suspension or adverse action proposed by the CI Disciplinary Board.

(6) **Delegated to:** Director, Strategy.

(7) **Redelegation:** This authority may not be redelegated.

(8) **Authority 3:** To serve as the Oral Reply Officer.

(9) **Delegated to:** The deciding official for the proposed action.

(10) **Redelegation:** The deciding official may redelegate this authority within CI to another manager of equivalent rank. The deciding official may not redelegate to the proposing official.

ddd

(11) **Authority 4:** To effect a non-disciplinary action, lesser disciplinary action, or probationary termination; except for cases referred to the CI Disciplinary Board or for Special Agents attending basic training at the Federal Law Enforcement Training Center (FLETC).

(12) **Delegated to:** Deputy Chief, CI; Directors, Field Operations (DFOs); Senior Executive Service (SES) Headquarters (HQ) Directors/Deputies; HQ Directors; Special Agents in Charge (SACs); and Resident Agents in Charge (RACs).

(13) **NOTE:** These officials will serve as the Proposing and Deciding Officials for Probationary Pre-Appointment issues.

(14) **NOTE:** The official effecting a non-disciplinary action, lesser disciplinary action, or probationary termination must be at least two supervisory levels above the employee, with the exception of SES, which can be effected by the first level supervisor.

(15) **Redelegation:** This authority may not be redelegated.

(16) **Authority 5:** To effect a non-disciplinary action or probationary termination for a Special Agent attending basic training at FLETC; except for cases referred to the CI Disciplinary Board.

(17) **Delegated to:** Director, National Criminal Investigation Training Academy (NCITA).

(18) **NOTE:** For Probationary Pre-Appointment issues, the Director, NCITA, will serve as the proposing and deciding official.

(19) **Redelegation:** This authority may not be redelegated.

(20) **Authority 6:** To propose a performance based action, disciplinary suspension, or adverse action, except for cases referred to the CI Disciplinary Board.

(21) **Delegated to:** Deputy Chief, CI; DFOs; SES HQ Directors/Deputies; HQ Directors; SACs; and RACs.

(22) **NOTE:** The Proposing Official must be at least two supervisory levels above the employee, with the exception of SES, which can be proposed by the first level supervisor.

(23) **Redelegation:** This authority may not be redelegated.

(24) **Authority 7:** To effect a performance based action, disciplinary suspension, or adverse action, except for cases referred to the CI Disciplinary Board.

(25) **Delegated to:** Deputy Chief, CI; DFOs; SES HQ Directors/Deputies in CI.

ddd

(26) **NOTE:** The Deciding Official must be at least three supervisory levels above the employee, with the exception of SES, which can be effected by the second level supervisor.

(27) **Redelegation:** This authority may not be redelegated.

(28) **Authority 8(a):** To issue a notice of opportunity to demonstrate acceptable performance.

   **Authority 8(b):** To issue a notice of intent to deny a within grade increase.

(29) **Delegated to:** The employee's first level supervisor.

(30) **Redelegation:** This authority may not be redelegated.

(31) **Authority 9(a):** To issue a determination that an employee's performance has improved as a result of the opportunity period.

   **Authority 9(b):** To issue a determination that the within grade increase is denied.

(32) **Delegated to:** The employee's first level supervisor.

(33) **Redelegation:** This authority may not be redelegated.

(34) **Authority 10:** To reassign a Special Agent who does not meet the 1811 Treasury Enforcement Agent Qualification Standards and is Not Medically Qualified (NMQ) for the Special Agent position.

(35) **Delegated to:** Deputy Director, Strategy, Resource Administration and Leadership.

(36) **Redelegation:** This authority may not be redelegated.

(37) **Authority 11:** To propose a non-cause removal of a Special Agent who does not meet the 1811 Treasury Enforcement Agent Qualification Standards and is NMQ for the Special Agent position.

(38) **Delegated to:** Deputy Director, Strategy, Resource Administration and Leadership

(39) **Redelegation:** This authority may not be redelegated.

(40) **Authority 12:** To effect a non-cause removal of a Special Agent who does not meet the 1811 Treasury Enforcement Agent Qualification Standards and is NMQ for the Special Agent position.

(41) **Delegated to:** Deputy Chief, CI.

ddd

(42) **Authority 13:** To approve a fitness for duty medical examination, independent medical examination, issue NMQ letters, and request waivers of the Treasury Enforcement Agent Qualification Standards.

(43) **Delegated to:** Deputy Director, Strategy, Resource Administration and Leadership

(44) **Redelegation:** This authority may not be redelegated.

(45) **Sources of Authority:** Exception from Delegation Order 6-29 approved July 15, 2022.

(46) To the extent that authority previously exercised consistent with this order may require ratification, it is hereby approved and ratified.

(47) **Effective Date:** January 1, 2023

(48) **Signed:** James C. Lee, Chief, Criminal Investigation



# Your Rights as a Taxpayer

**Publication 1**

This publication explains your rights as a taxpayer and the processes for examination, appeal, collection, and refunds. Also available in Spanish.

# The Taxpayer Bill of Rights

## 1. The Right to Be Informed

Taxpayers have the right to know what they need to do to comply with the tax laws. They are entitled to clear explanations of the laws and IRS procedures in all tax forms, instructions, publications, notices, and correspondence. They have the right to be informed of IRS decisions about their tax accounts and to receive clear explanations of the outcomes.

## 2. The Right to Quality Service

Taxpayers have the right to receive prompt, courteous, and professional assistance in their dealings with the IRS, to be spoken to in a way they can easily understand, to receive clear and easily understandable communications from the IRS, and to speak to a supervisor about inadequate service.

## 3. The Right to Pay No More than the Correct Amount of Tax

Taxpayers have the right to pay only the amount of tax legally due, including interest and penalties, and to have the IRS apply all tax payments properly.

## 4. The Right to Challenge the IRS's Position and Be Heard

Taxpayers have the right to raise objections and provide additional documentation in response to formal IRS actions or proposed actions, to expect that the IRS will consider their timely objections and documentation promptly and fairly, and to receive a response if the IRS does not agree with their position.

## 5. The Right to Appeal an IRS Decision in an Independent Forum

Taxpayers are entitled to a fair and impartial administrative appeal of most IRS decisions, including many penalties, and have the right to receive a written response regarding the Office of Appeals' decision. Taxpayers generally have the right to take their cases to court.

## 6. The Right to Finality

Taxpayers have the right to know the maximum amount of time they have to challenge the IRS's position as well as the maximum amount of time the IRS has to audit a particular tax year or collect a tax debt. Taxpayers have the right to know when the IRS has finished an audit.

## 7. The Right to Privacy

Taxpayers have the right to expect that any IRS inquiry, examination, or enforcement action will comply with the law and be no more intrusive than necessary, and will respect all due process rights, including search and seizure protections, and will provide, where applicable, a collection due process hearing.

## 8. The Right to Confidentiality

Taxpayers have the right to expect that any information they provide to the IRS will not be disclosed unless authorized by the taxpayer or by law. Taxpayers have the right to expect appropriate action will be taken against employees, return preparers, and others who wrongfully use or disclose taxpayer return information.

## 9. The Right to Retain Representation

Taxpayers have the right to retain an authorized representative of their choice to represent them in their dealings with the IRS. Taxpayers have the right to seek assistance from a Low Income Taxpayer Clinic if they cannot afford representation.

## 10. The Right to a Fair and Just Tax System

Taxpayers have the right to expect the tax system to consider facts and circumstances that might affect their underlying liabilities, ability to pay, or ability to provide information timely. Taxpayers have the right to receive assistance from the Taxpayer Advocate Service if they are experiencing financial difficulty or if the IRS has not resolved their tax issues properly and timely through its normal channels.

**The IRS Mission**  Provide America's taxpayers top-quality service by helping them understand and meet their tax responsibilities and enforce the law with integrity and fairness to all.

Publication 1 (Rev. 9-2017) Catalog Number 64731W Department of the Treasury **Internal Revenue Service** www.irs.gov

# Examinations, Appeals, Collections, and Refunds

## Examinations (Audits)

We accept most taxpayers' returns as filed. If we inquire about your return or select it for examination, it does not suggest that you are dishonest. The inquiry or examination may or may not result in more tax. We may close your case without change; or, you may receive a refund.

The process of selecting a return for examination usually begins in one of two ways. First, we use computer programs to identify returns that may have incorrect amounts. These programs may be based on information returns, such as Forms 1099 and W-2, on studies of past examinations, or on certain issues identified by compliance projects. Second, we use information from outside sources that indicates that a return may have incorrect amounts. These sources may include newspapers, public records, and individuals. If we determine that the information is accurate and reliable, we may use it to select a return for examination.

Publication 556, Examination of Returns, Appeal Rights, and Claims for Refund, explains the rules and procedures that we follow in examinations. The following sections give an overview of how we conduct examinations.

### By Mail

We handle many examinations and inquiries by mail. We will send you a letter with either a request for more information or a reason why we believe a change to your return may be needed. You can respond by mail or you can request a personal interview with an examiner. If you mail us the requested information or provide an explanation, we may or may not agree with you, and we will explain the reasons for any changes. Please do not hesitate to write to us about anything you do not understand.

### By Interview

If we notify you that we will conduct your examination through a personal interview, or you request such an interview, you have the right to ask that the examination take place at a reasonable time and place that is convenient for both you and the IRS. If our examiner proposes any changes to your return, he or she will explain the reasons for the changes. If you do not agree with these changes, you can meet with the examiner's supervisor.

### Repeat Examinations

If we examined your return for the same items in either of the 2 previous years and proposed no change to your tax liability, please contact us as soon as possible so we can see if we should discontinue the examination.

### Appeals

If you do not agree with the examiner's proposed changes, you can appeal them to the Appeals Office of the IRS. Most differences can be settled without expensive and time-consuming court trials. Your appeal rights are explained in detail in both Publication 5, Your Appeal Rights and How To Prepare a Protest If You Don't Agree, and Publication 556, Examination of Returns, Appeal Rights, and Claims for Refund.

If you do not wish to use the Appeals Office or disagree with its findings, you may be able to take your case to the U.S. Tax Court, U.S. Court of Federal Claims, or the U.S. District Court where you live. If you take your case to court, the IRS will have the burden of proving certain facts if you kept adequate records to show your tax liability, cooperated with the IRS, and meet certain other conditions. If the court agrees with you on most issues in your case and finds that our position was largely unjustified, you may be able to recover some of your administrative and litigation costs. You will not be eligible to recover these costs unless you tried to resolve your case administratively, including going through the appeals system, and you gave us the information necessary to resolve the case.

## Collections

Publication 594, The IRS Collection Process, explains your rights and responsibilities regarding payment of federal taxes. It describes:

- What to do when you owe taxes. It describes what to do if you get a tax bill and what to do if you think your bill is wrong. It also covers making installment payments, delaying collection action, and submitting an offer in compromise.

- IRS collection actions. It covers liens, releasing a lien, levies, releasing a levy, seizures and sales, and release of property.

- IRS certification to the State Department of a seriously delinquent tax debt, which will generally result in denial of a passport application and may lead to revocation of a passport.

Your collection appeal rights are explained in detail in Publication 1660, Collection Appeal Rights.

## Innocent Spouse Relief

Generally, both you and your spouse are each responsible for paying the full amount of tax, interest, and penalties due on your joint return. However, if you qualify for innocent spouse relief, you may be relieved of part or all of the joint liability. To request relief, you must file Form 8857, Request for Innocent Spouse Relief. For more information on innocent spouse relief, see Publication 971, Innocent Spouse Relief, and Form 8857.

## Potential Third Party Contacts

Generally, the IRS will deal directly with you or your duly authorized representative.

However, we sometimes talk with other persons if we need information that you have been unable to provide, or to verify information we have received. If we do contact other persons, such as a neighbor, bank, employer, or employees, we will generally need to tell them limited information, such as your name. The law prohibits us from disclosing any more information than is necessary to obtain or verify the information we are seeking. Our need to contact other persons may continue as long as there is activity in your case. If we do contact other persons, you have a right to request a list of those contacted. Your request can be made by telephone, in writing, or during a personal interview.

## Refunds

You may file a claim for refund if you think you paid too much tax. You must generally file the claim within 3 years from the date you filed your original return or 2 years from the date you paid the tax, whichever is later. The law generally provides for interest on your refund if it is not paid within 45 days of the date you filed your return or claim for refund. Publication 556, Examination of Returns, Appeal Rights, and Claims for Refund, has more information on refunds.

If you were due a refund but you did not file a return, you generally must file your return within 3 years from the date the return was due (including extensions) to get that refund.

## Taxpayer Advocate Service

TAS is an *independent* organization within the IRS that can help protect your taxpayer rights. We can offer you help if your tax problem is causing a hardship, or you've tried but haven't been able to resolve your problem with the IRS. If you qualify for our assistance, which is always free, we will do everything possible to help you. Visit *www.taxpayeradvocate.irs.gov* or call 1-877-777-4778.

## Tax Information

The IRS provides the following sources for forms, publications, and additional information.

- **Tax Questions:** 1-800-829-1040 (1-800-829-4059 for TTY/TDD)
- **Forms and Publications:** 1-800-829-3676 (1-800-829-4059 for TTY/TDD)
- **Internet:** www.irs.gov
- **Small Business Ombudsman:** A small business entity can participate in the regulatory process and comment on enforcement actions of the IRS by calling 1-888-REG-FAIR.
- **Treasury Inspector General for Tax Administration:** You can confidentially report misconduct, waste, fraud, or abuse by an IRS employee by calling 1-800-366-4484 (1-800-877-8339 for TTY/TDD). You can remain anonymous.



# General overview of taxpayer reliance on guidance published in the Internal Revenue Bulletin and FAQs

The purpose of this reliance page is to confirm/explain that FAQs generally cannot be relied upon and describe authority that can be relied upon.

## Guidance published in the Internal Revenue Bulletin

The Internal Revenue Bulletin (Bulletin) is the authoritative instrument of the Commissioner of Internal Revenue for announcing official rulings and procedures of the Internal Revenue Service and for publishing treasury decisions, executive orders, tax conventions, legislation, court decisions, and other items of general interest.

It is the policy of the Service to publish in the Bulletin all substantive rulings necessary to promote a uniform application of the tax laws, including all rulings that supersede, revoke, modify, or amend any of those previously published in the Bulletin. All published rulings apply retroactively unless otherwise indicated. Procedures relating solely to matters of internal management are not published; however, statements of internal practices and procedures that affect the rights and duties of taxpayers are published.

Revenue rulings represent the conclusions of the Service on the application of the law to the pivotal facts stated in the revenue ruling. In those based on positions taken in rulings to taxpayers or technical advice to Service field offices, identifying details and information of a confidential nature are deleted to prevent unwarranted invasions of privacy and to comply with statutory requirements.

Rulings and procedures reported in the Bulletin do not have the force and effect of Treasury Department regulations, but they may be used as precedents. Rulings not published in the Bulletin will not be relied on, used, or cited as precedents by Service personnel in the disposition of other cases. In applying published rulings and procedures, the effect of subsequent legislation, regulations, court decisions, rulings, and procedures must be considered, and Service personnel and others concerned are cautioned against reaching the same conclusions in other cases unless the facts and circumstances are substantially the same.

# FAQs

FAQs are a valuable alternative to guidance published in the Bulletin because they allow the IRS to more quickly communicate information to the public on topics of frequent inquiry and general applicability. FAQs typically provide responses to general inquiries rather than applying the law to taxpayer-specific facts and may not reflect various special rules or exceptions that could apply in any particular case. FAQs that have not been published in the Bulletin will not be relied on, used, or cited as precedents by Service personnel in the disposition of cases. Similarly, if an FAQ turns out to be an inaccurate statement of the law as applied to a particular taxpayer's case, the law will control the taxpayer's tax liability. Only guidance that is published in the Bulletin has precedential value.

Notwithstanding the non-precedential nature of FAQs, a taxpayer's reasonable reliance on an FAQ (even one that is subsequently updated or modified) is relevant and will be considered in determining whether certain penalties apply. Taxpayers who show that they relied in good faith on an FAQ and that their reliance was reasonable based on all the facts and circumstances will not be subject to a penalty that provides a reasonable cause standard for relief, including a negligence penalty or other accuracy-related penalty, to the extent that reliance results in an underpayment of tax. See Treas. Reg. § 1.6664-4(b) ☐ for more information. In addition, FAQs that are published in a Fact Sheet that is linked to an IRS news release are considered authority for purposes of the exception to accuracy-related penalties that applies when there is substantial authority for the treatment of an item on a return. See Treas. Reg. § 1.6662-4(d) ☐ for more information.

# Informal guidance (forms, instructions, publications, IRS.gov webpages)

Informal guidance like forms, instructions, publications and IRS.gov webpages is another valuable alternative to guidance published in the Bulletin. This informal guidance allows the IRS to more quickly provide administrative, educational, and procedural information to taxpayers needing information quickly, such as how and where to file returns, what to do if financial records are lost in a major disaster and other information about forms and instructions. Similar to FAQs, informal guidance does not apply the law to taxpayer-specific facts and may not reflect various special rules or exceptions that could apply in any particular case. Informal guidance has not been published in the Bulletin and will not be relied on, used, or cited as precedents by Service personnel in the disposition of cases. If information included in informal guidance turns out to be an inaccurate statement of the law as applied to a particular taxpayer's case, the law will control the taxpayer's tax liability. Only guidance that is published in the Bulletin has precedential value.

Notwithstanding the non-precedential nature of informal guidance like forms instructions, publications and IRS.gov webpages, a taxpayer's reasonable reliance on that informal guidance (even if the informal guidance is subsequently updated or modified) is relevant and will be considered in determining whether certain penalties apply. Taxpayers who show that they relied in good faith on informal guidance and that their reliance was

reasonable based on all the facts and circumstances will not be subject to a penalty that provides a reasonable cause standard for relief, including a negligence penalty or other accuracy-related penalty, to the extent that reliance results in an underpayment of tax. See Treas. Reg. § 1.6664-4(b) ☑ for more information.

IRS-FAQ

*Page Last Reviewed or Updated: 05-Dec-2024*

*erm or CFR reference (eg: fishing or 1 CFR 1.1)*

**FR CONTENT**

## § 2635.809 Just financial obligations.

Employees must satisfy in good faith their obligations as citizens, including all just financial obligations, especially those such as Federal, State, or local taxes that are imposed by law. For purposes of this section, a just financial obligation includes any financial obligation acknowledged by the employee or reduced to judgment by a court. In good faith means an honest intention to fulfill any just financial obligation in a timely manner. In the event of a dispute between an employee and an alleged creditor, this section does not require an agency to determine the validity or amount of the disputed debt or to collect a debt on the alleged creditor's behalf.



Department
of the
Treasury

**Internal
Revenue
Service**

**Publication 525**
Cat. No. 15047D

# Taxable and Nontaxable Income

For use in preparing
## 2018 Returns

## Contents

Future Developments . . . . . . . . . . . 1

What's New for 2018 . . . . . . . . . . . 1

What's New for 2019 . . . . . . . . . . . 2

Reminders . . . . . . . . . . . . . . . . 2

Introduction . . . . . . . . . . . . . . . 2

Employee Compensation . . . . . . . . . 3

Special Rules for Certain
    Employees . . . . . . . . . . . . . . 14

Business and Investment Income . . . . 16

Sickness and Injury Benefits . . . . . . . 17

Miscellaneous Income . . . . . . . . . . 20

Repayments . . . . . . . . . . . . . . . 34

How To Get Tax Help . . . . . . . . . . 35

Index . . . . . . . . . . . . . . . . . . 37

## Future Developments

For the latest information about developments related to Pub. 525, such as legislation enacted after it was published, go to *IRS.gov/Pub525*.

## What's New for 2018

**Form 1040 redesigned.** Form 1040 has been redesigned for 2018. See Form 1040 and its instructions for more information.

**Forms 1040A and 1040EZ no longer available.** Forms 1040A and 1040EZ aren't available to file your 2018 taxes. If you used one of these forms in the past, you'll now file Form 1040.

**Deferred compensation contribution limit increased.** If you participate in a 401(k), 403(b), or the federal government's Thrift Savings Plan (TSP), the total annual amount you can contribute is increased to $18,500. This also applies to most 457 plans.

**Health flexible spending arrangements (health FSAs) under cafeteria plans.** For tax years beginning in 2018, the dollar limitation under section 125(i) on voluntary employee salary reductions for contributions to health FSAs is $2,650.

**Qualified equity grants.** For tax years beginning after 2017, certain qualified employees can make a new election to defer income taxation for up to 5 years for the qualified stocks received. See *Qualified Equity Grants* under *Employee Compensation*, later.

**Suspension of qualified bicycle commuting reimbursement exclusion.** For tax years beginning after 2017, reimbursement you receive from your employer for the purchase, repair, or storage of a bicycle you regularly use for travel between your residence and place of



Get forms and other information faster and easier at:
*   *IRS.gov* (English)          *   *IRS.gov/Korean* (한국어)
*   *IRS.gov/Spanish* (Español)   *   *IRS.gov/Russian* (Русский)
*   *IRS.gov/Chinese* (中文)      *   *IRS.gov/Vietnamese* (TiếngViệt)

# Disability Pensions

If you retired on disability, you must include in income any disability pension you receive under a plan that is paid for by your employer. You must report your taxable disability payments as wages on line 1 of Form 1040 until you reach minimum retirement age. Minimum retirement age generally is the age at which you can first receive a pension or annuity if you aren't disabled.

 **TIP** *You may be entitled to a tax credit if you were permanently and totally disabled when you retired. For information on this credit, see Pub. 524.*

Beginning on the day after you reach minimum retirement age, payments you receive are taxable as a pension or annuity. Report the payments on lines 4a and 4b of Form 1040. For more information on pensions and annuities, see Pub. 575.

**Terrorist attacks.** Don't include in your income disability payments you receive for injuries incurred as a direct result of terrorist attacks directed against the United States (or its allies), whether outside or within the United States. However, you must include in your income any amounts that you received that you would have received in retirement had you not become disabled as a result of a terrorist attack.

 **TIP** *Contact the company or agency making these payments if it incorrectly reports your payments as taxable income to the IRS on Form W-2, or on Form 1099-R, to request that it re-issue the form to report some or all of these payments as nontaxable income in box 12 (under code J) on Form W-2 or in box 1 but not in box 2a on Form 1099-R. If income taxes are being incorrectly withheld from these payments, you may also submit Form W-4 to the company or agency to stop the withholding of income taxes from payments reported on Form W-2 or you may submit Form W-4P to stop the withholding of income taxes from payments reported on Form 1099-R.*

Disability payments you receive for injuries not incurred as a direct result of a terrorist attack or for illnesses or diseases not resulting from an injury incurred as a direct result of a terrorist attack can't be excluded from your income under this provision but may be excludable from other reasons. See Pub. 907.

**Retirement and profit-sharing plans.** If you receive payments from a retirement or profit-sharing plan that doesn't provide for disability retirement, don't treat the payments as a disability pension. The payments must be reported as a pension or annuity.

**Accrued leave payment.** If you retire on disability, any lump-sum payment you receive for accrued annual leave is a salary payment. The payment isn't a disability payment. Include it in your income in the tax year you receive it.

# Military and Government Disability Pensions

Certain military and government disability pensions aren't taxable.

**Service-connected disability.** You may be able to exclude from income amounts you receive as a pension, annuity, or similar allowance for personal injury or sickness resulting from active service in one of the following government services.

- The armed forces of any country.
- The National Oceanic and Atmospheric Administration.
- The Public Health Service.
- The Foreign Service.

**Conditions for exclusion.** Don't include the disability payments in your income if any of the following conditions apply.

1. You were entitled to receive a disability payment before September 25, 1975.

2. You were a member of a listed government service or its reserve component, or were under a binding written commitment to become a member, on September 24, 1975.

3. You receive the disability payments for a combat-related injury. This is a personal injury or sickness that:

   a. Results directly from armed conflict;

   b. Takes place while you're engaged in extra-hazardous service;

   c. Takes place under conditions simulating war, including training exercises such as maneuvers; or

   d. Is caused by an instrumentality of war.

4. You would be entitled to receive disability compensation from the VA if you filed an application for it. Your exclusion under this condition is equal to the amount you would be entitled to receive from the VA.

**Pension based on years of service.** If you receive a disability pension based on years of service, in most cases you must include it in your income. However, if the pension qualifies for the exclusion for a service-connected disability (discussed earlier), don't include in income the part of your pension that you would have received if the pension had been based on a percentage of disability. You must include the rest of your pension in your income.

**Retroactive VA determination.** If you retire from the U.S. Armed Forces based on years of service and are later given a retroactive service-connected disability rating by the VA, your retirement pay for the retroactive period is excluded from income up to the amount of VA disability benefits you would have been entitled to receive. You can claim a refund of any tax paid on the excludable amount (subject to the statute of limitations) by filing an amended return on Form 1040X for each previous year during the retroactive period. You must include with each Form 1040X a copy of the official VA determination letter granting the retroactive benefit. The letter must show the amount withheld and the effective date of the benefit.

If you receive a lump-sum disability severance payment and are later awarded VA disability benefits, exclude 100% of the severance benefit from your income. However, you must include in your income any lump-sum readjustment or other nondisability severance payment you received on release from active duty, even if you're later given a retroactive disability rating by the VA.

**Special statute of limitations.** In most cases, under the statute of limitations a claim for credit or refund must be filed within 3 years from the time a return was filed. However, if you receive a retroactive service-connected disability rating determination, the statute of limitations is extended by a 1-year period beginning on the date of the determination. This 1-year extended period applies to claims for credit or refund filed after June 17, 2008, and doesn't apply to any tax year that began more than 5 years before the date of the determination.

**Example 19.** You retired in 2012 and receive a pension based on your years of service. On August 3, 2018, you receive a determination of service-connected disability retroactive to 2012. Generally, you could claim a refund for the taxes paid on your pension for 2015, 2016, and 2017. However, under the special limitation period, you can also file a claim for 2014 as long as you file the claim by August 3, 2019. You can't file a claim for 2012 and 2013 because those tax years began more than 5 years before the determination.

**Terrorist attack or military action.** Don't include in your income disability payments you receive for injuries resulting directly from a terrorist or military action. However, you must include in your income any amounts that you received that you would have received in retirement had you not become disabled as a result of a terrorist or military action. Disability payments you receive for injuries not incurred as a direct result of a terrorist or military action or for illnesses or diseases not resulting from an injury incurred as a direct result of a terrorist or military action may be excludable from income for other reasons. See Pub. 907.

A terrorist action is one that is directed against the United States or any of its allies (including a multinational force in which the United States is participating). A military action is one that involves the Armed Forces of the United States and is a result of actual or threatened violence or aggression against the United States or any of its allies, but doesn't include training exercises.

# Long-Term Care Insurance Contracts

In most cases, long-term care insurance contracts are treated as accident and health insurance contracts. Amounts you receive from them (other than policyholder dividends or premium refunds) are excludable in most cases from income as amounts received for personal injury or sickness. To claim an exclusion for payments made on a per diem or other periodic basis under a long-term care insurance contract, you must file Form 8853 with your return.

that many examinations result in a refund or acceptance of the tax return without change.

This publication discusses general rules and procedures that the IRS follows in examinations. It explains what happens during an examination and your appeal rights, both within the IRS and in the federal court system. It also explains how to file a claim for refund of tax you already paid.

As a taxpayer, you have the right to be treated fairly, professionally, promptly, and courteously by IRS employees. Publication 1, Your Rights as a Taxpayer, explains your rights when dealing with the IRS.

**Comments and suggestions.** We welcome your comments about this publication and your suggestions for future editions.

You can write to us at the following address:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224

We respond to many letters by telephone. Therefore, it would be helpful if you would include your daytime phone number, including the area code, in your correspondence.

You can send your comments from *www.irs.gov/ formspubs/*. Click on "More Information" and then on "Comment on Tax Forms and Publications."

Although we cannot respond individually to each comment received, we do appreciate your feedback and will consider your comments as we revise our tax products.

***Ordering forms and publications.*** Visit *www.irs.gov/ formspubs* to download forms and publications, call 1-800-TAX-FORM (1-800-829-3676), or write to the address below and receive a response within 10 days after your request is received.

Internal Revenue Service
1201 N. Mitsubishi Motorway
Bloomington, IL 61704-6613

***Tax questions.*** If you have a tax question, check the information available on *www.irs.gov* or call 1-800-829-1040. We cannot answer tax questions sent to either of the above addresses.

## Useful Items

You may want to see:

### Publication

- ❑ 1   Your Rights as a Taxpayer
- ❑ 5   Your Appeal Rights and How To Prepare a Protest If You Don't Agree
- ❑ 547  Casualties, Disasters, and Thefts
- ❑ 594  The IRS Collection Process
- ❑ 910  Guide to Free Tax Services
- ❑ 971  Innocent Spouse Relief

- ❑ **1546** Taxpayer Advocate Service–Your Voice at the IRS
- ❑ **1660** Collection Appeal Rights
- ❑ **3605** Fast Track Mediation
- ❑ **3920** Tax Relief for Victims of Terrorist Attacks
- ❑ **4134** Low Income Taxpayer Clinic List

### Form (and Instructions)

- ❑ **843**  Claim for Refund and Request for Abatement
- ❑ **911**  Request for Taxpayer Advocate Service Assistance (and Application for Taxpayer Assistance Order)
- ❑ **1040X** Amended U.S. Individual Income Tax Return
- ❑ **2848** Power of Attorney and Declaration of Representative
- ❑ **4506** Request for Copy of Tax Return
- ❑ **4506-T** Request for Transcript of Tax Return
- ❑ **8379** Injured Spouse Allocation
- ❑ **8857** Request for Innocent Spouse Relief

See *How To Get Tax Help*, near the end of this publication, for information about getting these publications and forms.

# Examination of Returns

Your return may be examined for a variety of reasons, and the examination may take place in any one of several ways. After the examination, if any changes to your tax are proposed, you can either agree with those changes and pay any additional tax you may owe, or you can disagree with the changes and appeal the decision.

**Examination selection criteria.** Your return may be selected for examination on the basis of computer scoring. A computer program called the Discriminant Inventory Function System (DIF) assigns a numeric score to each individual and some corporate tax returns after they have been processed. If your return is selected because of a high score under the DIF system, the potential is high that an examination of your return will result in a change to your income tax liability.

Your return may also be selected for examination on the basis of information received from third-party documentation, such as Forms 1099 and W-2, that does not match the information reported on your return. Or, your return may be selected to address both the questionable treatment of an item and to study the behavior of similar taxpayers (a market segment) in handling a tax issue.

In addition, your return may be selected as a result of information received from other sources on potential noncompliance with the tax laws or inaccurate filing. This information can come from a number of sources, including

- Relate to noncriminal tax proceedings brought in federal court by or against the United States.

In the case of communications in connection with the promotion of a person's participation in a tax shelter, the confidentiality privilege does not apply to written communications between a federally authorized practitioner and that person, any director, officer, employee, agent, or representative of that person, or any other person holding a capital or profits interest in that person.

A tax shelter is any entity, plan, or arrangement, a significant purpose of which is the avoidance or evasion of income tax.

**Recordings.** You can make an audio recording of the examination interview. Your request to record the interview should be made in writing. You must notify the examiner 10 days in advance and bring your own recording equipment. The IRS also can record an interview. If the IRS initiates the recording, you must be notified 10 days in advance and you can get a copy of the recording at your expense.

**Transfers to another area.** Generally, your return is examined in the area where you live. But if your return can be examined more quickly and conveniently in another area, such as where your books and records are located, you can ask to have the case transferred to that area.

**Repeat examinations.** The IRS tries to avoid repeat examinations of the same items, but sometimes this happens. If your tax return was examined for the same items in either of the 2 previous years and no change was proposed to your tax liability, please contact the IRS as soon as possible to see if the examination should be discontinued.

## The Examination

An examination usually begins when you are notified that your return has been selected. The IRS will tell you which records you will need. The examination can proceed more easily if you gather your records before any interview.

Any proposed changes to your return will be explained to you or your authorized representative. It is important that you understand the reasons for any proposed changes. You should not hesitate to ask about anything that is unclear to you.

The IRS must follow the tax laws set forth by Congress in the Internal Revenue Code. The IRS also follows Treasury Regulations, other rules, and procedures that were written to administer the tax laws and court decisions. However, the IRS can lose cases that involve taxpayers with the same issue and still apply its interpretation of the law to your situation.

Most taxpayers agree to changes proposed by examiners, and the examinations are closed at this level. If you do not agree, you can appeal any proposed change by following the procedures provided to you by the IRS. A more complete discussion of appeal rights is found later under *Appeal Rights*.

## If You Agree

If you agree with the proposed changes, you can sign an agreement form and pay any additional tax you may owe. You must pay interest on any additional tax. If you pay when you sign the agreement, the interest is generally figured from the due date of your return (excluding any extension of time to file) to the date of your payment.

If you do not pay the additional tax when you sign the agreement, you will receive a bill that includes interest. If you pay the amount due within 10 business days of the billing date, you will not have to pay more interest or penalties. This period is extended to 21 calendar days if the amount due is less than $100,000.

If you are due a refund, you will receive it sooner if you sign the agreement form. You will be paid interest on the refund.

If the IRS accepts your tax return as filed, you will receive a letter in a few weeks stating that the examiner proposed no changes to your return. You should keep this letter with your tax records.

## If You Do Not Agree

If you do not agree with the proposed changes, the examiner will explain your appeal rights. If your examination takes place in an IRS office, you can request an immediate meeting with the examiner's supervisor to explain your position. If an agreement is reached, your case will be closed.

If you cannot reach an agreement with the supervisor at this meeting, or if the examination took place outside of an IRS office, the examiner will write up your case explaining your position and the IRS's position. The examiner will forward your case for processing.

**Fast track mediation.** The IRS offers fast track mediation services to help taxpayers resolve many disputes resulting from:

- Examinations (audits),

- Offers in compromise,

- Trust fund recovery penalties, and

- Other collection actions.

Most cases that are not docketed in any court qualify for fast track mediation. Mediation can take place at a conference you request with a supervisor, or later. The process involves an Appeals Officer who has been trained in mediation. You may represent yourself at the mediation session, or someone else can act as your representative. For more information, see Publication 3605.

## Abatement of Interest for Individuals Affected by Presidentially Declared Disasters or Military or Terrorist Actions

If you are (or were) affected by a Presidentially declared disaster occurring after 1996 or a terrorist or military action occurring after September 10, 2001, the IRS may abate (reduce) the amount of interest you owe on certain taxes. The IRS may abate interest for the period of any additional time to file or pay that the IRS provides on account of the disaster or the terrorist or military action. The IRS will issue a notice or news release indicating who are affected taxpayers and stating the period of relief.

If you are eligible for relief from interest, but were charged interest for the period of relief, the IRS may retroactively abate your interest. To the extent possible, the IRS can take the following actions:

- Make appropriate adjustments to your account.
- Notify you when the adjustments are made.
- Refund any interest paid by you where appropriate.

For more information on disaster area losses, see *Disaster Area Losses* in Publication 547. For more information on other tax relief for victims of terrorist attacks, see Publication 3920.

## Offer in Compromise

In certain circumstances, the IRS will allow you to pay less than the full amount you owe. If you think you may qualify, you should submit your offer by filing Form 656, Offer in Compromise. The IRS may accept your offer for any of the following reasons:

- There is doubt about the amount you owe (or whether you owe it).
- There is doubt as to whether you can pay the amount you owe based on your financial situation.
- An economic hardship would result if you had to pay the full amount owed.
- Your case presents compelling reasons that the IRS determines are a sufficient basis for compromise.

If your offer is rejected, you have 30 days to ask the Appeals Office of the IRS to reconsider your offer.

 *The IRS offers fast track mediation services to help taxpayers resolve many issues including a dispute regarding an offer in compromise. For more information, see Publication 3605.*

Generally, if you submit an offer in compromise, the IRS will delay certain collection activities. The IRS usually will not levy (take) your property to settle your tax bill during the following periods:

- While the IRS is evaluating your offer in compromise.

- The 30 days immediately after the offer is rejected.
- While your timely-filed appeal is being considered by Appeals.

Also, if the IRS rejects your original offer and you submit a revised offer within 30 days of the rejection, the IRS generally will not levy your property while it considers your revised offer.

For more information about submitting an offer in compromise, see Form 656.

# Appeal Rights

Because people sometimes disagree on tax matters, the IRS has an appeals system. Most differences can be settled within this system without expensive and time-consuming court trials.

However, your reasons for disagreeing must come within the scope of the tax laws. For example, you cannot appeal your case based only on moral, religious, political, constitutional, conscientious, or similar grounds.

In most instances, you may be eligible to take your case to court if you do not reach an agreement at your appeals conference, or if you do not want to appeal your case to the IRS Office of Appeals. See *Appeals to the Courts*, later, for more information.

## Appeal Within the IRS

You can appeal an IRS tax decision to a local Appeals Office, which is separate from and independent of the IRS office taking the action you disagree with. The Appeals Office is the only level of appeal within the IRS. Conferences with Appeals Office personnel are held in an informal manner by correspondence, by telephone, or at a personal conference.

If you want an appeals conference, follow the instructions in the letter you received. Your request will be sent to the Appeals Office to arrange a conference at a convenient time and place. You or your representative should be prepared to discuss all disputed issues at the conference. Most differences are settled at this level.

If agreement is not reached at your appeals conference, you may be eligible to take your case to court. See *Appeals to the Courts*, later.

### Protests and Small Case Requests

When you request an Appeals conference, you may also need to file either a formal written protest or a small case request with the office named in the letter you received. Also, see the special appeal request procedures in Publication 1660.

**Written protest.** You need to file a written protest in the following cases:

- All employee plan and exempt organization cases without regard to the dollar amount at issue.
- All partnership and S corporation cases without regard to the dollar amount at issue.
- All other cases, unless you qualify for the small case request procedure, or other special appeal procedures such as requesting Appeals consideration of liens, levies, seizures, or installment agreements.

If you must submit a written protest, see the instructions in Publication 5 about the information you need to provide. The IRS urges you to provide as much information as you can, as it will help speed up your appeal. That will save you both time and money.

 *Be sure to send the protest within the time limit specified in the letter you received.*

**Small case request.** If the total amount for any tax period is not more than $25,000, you may make a small case request instead of filing a formal written protest. In figuring the total amount, include a proposed increase or decrease in tax (including penalties), or claimed refund. If you are making an offer in compromise, include total unpaid tax, penalty, and interest due. For a small case request, follow the instructions in our letter to you by sending a letter:

- Requesting Appeals consideration,
- Indicating the changes you do not agree with, and
- Indicating the reasons why you do not agree.

## Representation

You can represent yourself at your appeals conference, or you can be represented by any federally authorized practitioner, including an attorney, a certified public accountant, an enrolled actuary, or an enrolled agent.

If your representative attends a conference without you, he or she can receive or inspect confidential information only if you have filed a power of attorney or a tax information authorization. You can use a Form 2848 or any other properly written power of attorney or authorization.

You can also bring witnesses to support your position.

**Confidentiality privilege.** Generally, the same confidentiality protection that you have with an attorney also applies to certain communications that you have with federally authorized practitioners. See *Confidentiality privilege* under *If Your Return Is Examined*, earlier.

## Appeals to the Courts

If you and the IRS still disagree after the appeals conference, you may be entitled to take your case to the United States Tax Court, the United States Court of Federal

Claims, or a United States District Court. These courts are independent of the IRS.

If you elect to bypass the IRS's appeals system, you may be able to take your case to one of the courts listed above. However, a case petitioned to the United States Tax Court will normally be considered for settlement by an Appeals Officer before the Tax Court hears the case.

 *If you unreasonably fail to pursue the IRS's appeals system, or if your case is intended primarily to cause a delay, or your position is frivolous or groundless, the Tax Court may impose a penalty of up to $25,000. See* Appeal Within the IRS, *earlier.*

**Prohibition on requests to taxpayers to give up rights to bring civil action.** The Government cannot ask you to waive your right to sue the United States or a Government officer or employee for any action taken in connection with the tax laws. However, your right to sue can be waived if:

- You knowingly and voluntarily waive that right,
- The request to waive that right is made in writing to your attorney or other federally authorized practitioner, or
- The request is made in person and your attorney or other representative is present.

**Burden of proof.** For court proceedings resulting from examinations started after July 22, 1998, the IRS generally has the burden of proof for any factual issue if you have met the following requirements:

- You introduced credible evidence relating to the issue.
- You complied with all substantiation requirements of the Internal Revenue Code.
- You maintained all records required by the Internal Revenue Code.
- You cooperated with all reasonable requests by the IRS for information regarding the preparation and related tax treatment of any item reported on your tax return.
- You had a net worth of $7 million or less and not more than 500 employees at the time your tax liability is contested in any court proceeding if your tax return is for a corporation, partnership, or trust.

 *The burden of proof does not change on an issue when another provision of the tax laws requires a specific burden of proof with respect to that issue.*

***Use of statistical information.*** In the case of an individual, the IRS has the burden of proof in court proceedings based on any IRS reconstruction of income solely through the use of statistical information on unrelated taxpayers.

**Penalties.** The IRS has the burden of initially producing evidence in court proceedings with respect to the liability of any individual taxpayer for any penalty, addition to tax, or additional amount imposed by the tax laws.

**Recovering litigation or administrative costs.** These are the expenses that you pay to defend your position to the IRS or the courts. You may be able to recover reasonable litigation or administrative costs if all of the following conditions apply:

- You are the prevailing party.

- You exhaust all administrative remedies within the IRS.

- Your net worth is below a certain limit (see _Net worth requirements_, later).

- You do not unreasonably delay the proceeding.

- You apply for administrative costs within 90 days of the date on which the final decision of the IRS Office of Appeals as to the determination of the tax, interest, or penalty was mailed to you.

- You apply for litigation costs within the time frames provided by Tax Court Rule 231, found at _www.ustaxcourt.gov_.

Prevailing party, reasonable litigation costs, and reasonable administrative costs are explained later.

**Note.** If the IRS denies your award of administrative costs, and you want to appeal, you must petition the Tax Court within 90 days of the date on which the IRS mails the denial notice.

**Prevailing party.** Generally, you are the prevailing party if:

- You substantially prevail with respect to the amount in controversy or on the most significant tax issue or set of issues in question, and

- You meet the net worth requirements, discussed later.

You will not be treated as the prevailing party if the United States establishes that its position was substantially justified. The position of the United States is presumed not to be substantially justified if the IRS:

- Did not follow its applicable published guidance (such as regulations, revenue rulings, notices, announcements, private letter rulings, technical advice memoranda, and determination letters issued to the taxpayer) in the proceeding (This presumption can be overcome by evidence.), or

- Has lost in courts of appeal for other circuits on substantially similar issues.

The court will generally decide who is the prevailing party.

**Reasonable litigation costs.** These include the following costs:

- Reasonable court costs.

- The reasonable costs of studies, analyses, engineering reports, tests, or projects found by the court to be necessary for the preparation of your case.

- The reasonable costs of expert witnesses.

- Attorney fees that generally may not exceed $125 maximum hourly rate as set by statute and indexed for inflation. See _Attorney fees_, later.

**Reasonable administrative costs.** These include the following costs:

- Any administrative fees or similar charges imposed by the IRS.

- The reasonable costs of studies, analyses, engineering reports, tests, or projects.

- The reasonable costs of expert witnesses.

- Attorney fees that generally may not exceed $125 per hour. See _Attorney fees_, later.

**Timing of costs.** Administrative costs can be awarded for costs incurred after the earliest of:

- The date the first letter of proposed deficiency is sent that allows you an opportunity to request administrative review in the IRS Office of Appeals,

- The date you receive notice of the IRS Office of Appeals' decision, or

- The date of the notice of deficiency.

**Net worth requirements.** An individual taxpayer may be able to recover litigation or administrative costs if the following requirements are met:

- For individuals — your net worth does not exceed $2 million as of the filing date of your petition for review. For this purpose, individuals filing a joint return are treated as separate individuals.

- For estates — your net worth does not exceed $2 million as of the date of the decedent's death.

- For charities and certain cooperatives — you do not have more than 500 employees as of the filing date of your petition for review.

- For all other taxpayers — as of the filing date of your petition for review, your net worth does not exceed $7 million, and you must not have more than 500 employees.

**Qualified offer rule.** You can also receive reasonable costs and fees and be treated as a prevailing party in a civil action or proceeding if:

- You make a qualified offer to the IRS to settle your case,

- The IRS does not accept that offer, and

- The tax liability (not including interest, unless interest is at issue) later determined by the court is equal to or less than the amount of your qualified offer.

You must also meet the remaining requirements, including the exhaustion of administrative remedies and the net worth requirement, discussed earlier, to get the benefit of the qualified offer rule.

**Qualified offer.** This is a written offer made by you during the qualified offer period. It must specify both the offered amount of your liability (not including interest) and that it is a qualified offer.

To be a qualified offer, it must remain open from the date it is made until the earliest of:

- The date it is rejected,

- The date the trial begins, or

- 90 days from the date it is made.

**Qualified offer period.** This period begins on the day the IRS mails you the first letter of proposed deficiency that allows you to request review by the IRS Office of Appeals. It ends 30 days before your case is first set for trial.

**Attorney fees.** Attorney fees generally may not exceed $125 maximum hourly rate as set by statute and indexed for inflation. However, this amount can be higher in certain limited circumstances depending on the level of difficulty of the issues in the case and the local availability of tax expertise. See IRS.gov for more information.

 *Attorney fees include the fees paid by a taxpayer for the services of anyone who is authorized to practice before the Tax Court or before the IRS. In addition, attorney fees can be awarded in civil actions for unauthorized inspection or disclosure of a taxpayer's return or return information.*

Fees can be awarded in excess of the actual amount charged if:

- You are represented for no fee, or for a nominal fee, as a pro bono service, and

- The award is paid to your representative or to your representative's employer.

**Jurisdiction for determination of employment status.** The Tax Court can review IRS employment status determinations (for example, whether individuals hired by you are in fact your employees or independent contractors) and the amount of employment tax under such determinations. Tax Court review can take place only if, in connection with an audit of any person, there is a controversy involving a determination by the IRS that either:

- One or more individuals performing services for that person are employees of that person, or

- That person is not entitled to relief under *Section 530(a) of the Revenue Act of 1978* (discussed later).

The following rules also apply to a Tax Court review of employment status:

- A Tax Court petition to review these determinations can be filed only by the person for whom the services are performed,

- If you receive a Notice of Determination by certified or registered mail, you must file a petition for Tax Court review within 90 days of the date of mailing that notice (150 days if the notice is addressed to you outside the United States),

- If during the Tax Court proceeding, you begin to treat as an employee an individual whose employment status is at issue, the Tax Court will not consider that change in its decision,

- Assessment and collection of tax is suspended while the Tax Court review is taking place,

- Payment of the asserted employment tax deficiency is not required to petition the U.S. Tax Court for a determination of employment status.

- There can be a *de novo* review by the Tax Court (a review which does not consider IRS administrative findings), and

- At your request and with the Tax Court's agreement, small tax case procedures (discussed later) are available to simplify the case resolution process when the amount at issue (including additions to tax and penalties) is $50,000 or less for each tax period involved.

For further information, see Publication 3953, Questions and Answers About Tax Court Proceedings for Determination of Employment Status Under IRC Section 7436.

**Section 530(a) of the Revenue Act of 1978.** This section relieves an employer of certain employment tax responsibilities for individuals not treated as employees. It also provides relief to taxpayers under audit or involved in administrative or judicial proceedings.

**Tax Court review of request for relief from joint and several liability on a joint return.** As discussed later, at *Relief from joint and several liability on a joint return* under *Claims for Refund*, you can request relief from liability for tax you owe, plus related penalties and interest, that you believe should be paid by your spouse (or former spouse). You also can petition (ask) the Tax Court to review your request for innocent spouse relief or separation of liability if either:

- The IRS sends you a determination notice denying, in whole or in part, your request, or

- You do not receive a determination notice from the IRS within 6 months from the date you file Form 8857.

If you receive a determination notice, you must petition the Tax Court to review your request during the 90-day period that begins on the date the IRS mails you the notice. See Publication 971 for more information.

**Note.** Your spouse or former spouse may file a written protest and request an Appeals conference to protest your claim of innocent spouse relief or separation of liability. See Rev. Proc. 2003-19, which is on page 371 of the Internal Revenue Bulletin 2003-5 at *www.irs.gov/pub/irs-irbs/irb03-05.pdf*.

Standard Form 52
Rev 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4.

## REQUEST FOR PERSONNEL ACTION

**PART A - Requesting Office** (Also complete Part B, Items 1,7-22,32,33,36 and 39)

| 1. Actions Requested | 2. Request Number |
|---|---|
| Separation | |

| 3. For Additional Information Call (Name and Telephone Number) | 4. Proposed Eff. Date |
|---|---|
| James C Lee at 312/292-4502. | 08-16-2023 |

| 5. Action Requested By (Typed Name, Title, Signature, and Request Date) | 6. Action Authorized By (Typed Name, Title, Signature, and Date) | |
|---|---|---|
| Jean Brandenburg-Smith on behalf of James Lee  08-11-2023<br>Chief, Criminal Investigation | Jean Brandenburg-Smith on behalf of James Lee<br>Chief, Criminal Investigation | 08-11-2023 |

**PART B - For Preparation of SF 50** (Use only codes in The Guide to Personnel Data Standards.    Show all dates in month-day-year order.)

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| Butler,Jennifer Renee | XXX-XX-7317 | 03-22-1978 | 08-16-2023 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 330 | Removal | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| V8J | 5 U.S.C. 75 PSTPT EQ | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
| | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| INVEST ANL<br>PD: 95182A        Position:    66011632 | |

| 8.Pay Plan | 9.Occ. CD | 10.Grade/Level | 11.Step/Rate | 12.Total Salary | 13.Pay Basis | 16.Pay Plan | 17.Occ. CD | 18.Grade/Level | 19.Step/Rate | 20.Total Salary/Award | 21.Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 1805 | 11 | 03 | $73,713.00 | PA | | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| $63,273.00 | $10,440.00 | $73,713.00 | $0 | | | | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| INTERNAL REVENUE SERVICE<br>GROUP 58-40 ATL INV PROF STAFF<br>UNIVERSITY PLACE MOBILE | |

### EMPLOYEE DATA

| 23. Veterans Preference | | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF | |
|---|---|---|---|---|---|---|---|
| 1-None<br>2-5 Point | 3-10 Point/Disability<br>4-10 Point/Compensable | 5-10 Point/Other<br>6-10 Point/Compensable/30% | 0-None<br>1-Permanent | 2-Conditional<br>3-Indefinite | | X  YES | NO |
| 6 | | | 1 | | | | |

| 27. FEGLI | | 28. Annuitant Indicator | | 29. Pay Rate Determinant |
|---|---|---|---|---|
| A1 | Coverage Ended After 12 Months in Non-Pay Status | 9 | Not Applicable | 0  0-Regular Rate |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|---|
| KF  FERS-FRAE | 04-09-2014 | F | F-Full Time | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1-Competitive Service 3-SES General<br>2-Excepted Service    4-SES Career Reserved | E-Exempt<br>N-Nonexempt | | 8888 |
| 1 | N | | |

| 38. Duty Station Code | 39. Duty Station (City-County-State or Overseas Location) |
|---|---|
| 012100097 | MOBILE Mobile AL USA |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

| 45. Edu. Lvl. | 46. Yr. Degr. Attd | 47. Acad. Discipl. | 48. Func. Class | 49. Citizenship | 50. Veterans Status | 51. Supervisory Status |
|---|---|---|---|---|---|---|
| 04 | 0 | | 00 | 1  1-USA 8-Other | P  Post VEV | 8  Other |

**PART C - Reviews and Approvals** (Not to be used by requesting office.)

| 1. Office/Function | Initials/Signature | Date | 1. Office/Function | Initials/Signature | Date |
|---|---|---|---|---|---|
| A. HR Authorizer | LaShaun Reed | 08-14-2023 | D. | | |
| B. | | | E. | | |
| C. | | | F. | | |

| 2. Approval: I certify that the information entered on this form is accurate and the proposed action is in compliance with statutory and regulatory requirements. | Signature Reed,LaShaun Nicole | Approval Date 08-14-2023 |
|---|---|---|

CONTINUED ON REVERSE SIDE          OVER          Editions Prior to 7/91 Are Not Usable After 6/30/93

Name: Butler,Jennifer Renee                                    PAR Number:

## PART D – Remarks by Requesting Office

(Note to Supervisors: Do you know of additional or conflicting reasons for the employee's resignation/retirement).     ☐ YES   ☐ NO
    If ""YES"", please state these facts on a separate sheet and attach to SF52).

## PART E – Employee Resignation/Retirement

### Privacy Act Statement

You are requested to furnish a specific reason for your resignation or retirement and a forwarding address. Your reason may be considered in any future decision regarding your re-employment in the Federal service and may also be used to determine your eligibility for unemployment compensation benefits. Your forwarding address will be used primarily to mail you copies of any documents you should have or any pay or compensation to which you are entitled.

This information is requested under authority of sections 301, 3301, and 8506 of title 5, U.S. Code. Sections 301 abd 3301 authorize OPM and agencies to issue

regulations with regard to employment of individuals in the Federal service and their records, while section 8506 requires agencies to furnish the specific reason for termination of Federal service to the Secretary of Labor or a State agency in connection with administation of unemployment compensation programs.

The furnishing of this information is voluntary; however, failure to provide it may result in your not receiving: (1) your copies of those documents you should have; (2) pay or other compensation due you; (3) any unemployment compensation benefits to which you may be entitled.

1. Reasons for Resignation/Retirement (NOTE: Your reasons are used in determining possible unemployment benefits.
    Please be specific and avoid generalizations.
    Your resignation/retirement is effective at the end of the day - midnight - unless you specify otherwise.)

| 2. Effective Date | 3. Your Signature | 4. Date Signed | 5. Forwarding Address     (Number, Street, City, State, ZIP Code) |
|---|---|---|---|
| | | | |

## PART F – Remarks for SF 50

- SF-8 FURNISHED.

- FORWARDING ADDRESS= 2411 WHITE ST MOBILE, AL 36605

- LUMP-SUM PAYMENT TO BE MADE FOR ANY UNUSED ANNUAL LEAVE.

- REASON(S) FOR REMOVAL: ABSENCE WITHOUT LEAVE (AWOL), FAILURE TO FOLLOW
  MANAGERIAL DIRECTIVES AND VIOLATIONS RELATING TO IRM 6.751.1.19(2)



DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

CRIMINAL INVESTIGATION

June 15, 2023

## CERTIFIED MAIL-RETURN RECEIPT REQUESTED

Jennifer Butler
2411 White St
Mobile, AL 36605

Dear Ms. Butler,

This is a notice of proposed adverse action issued in accordance with Title 5, Part 752 of the Code of Federal Regulations (CFR). In order to promote the efficiency of the Service, it is proposed remove you from the Service or otherwise discipline you, at any time after 30 full calendar days from the date you receive this notice.

This proposed adverse action is based on the following reasons:

**Reason 1**: You were absent without leave (AWOL).

**Specification 1**: August 15, 2022, through August 26, 2022, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 80 hours.

**Specification 2**: August 29, 2022, through September 9, 2022, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 72 hours.

**Specification 3**: September 12, 2022, through September 23, 2022, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 80 hours.

**Specification 4**: September 26, 2022, through October 7, 2022, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 80 hours.

**Specification 5**: October 11, 2022, through October 21, 2022, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 72 hours.

**Specification 6**: October 24, 2022, through November 4, 2022, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 80 hours.

2

**Specification 7**: November 7, 2022, through November 18, 2022, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 72 hours.

**Specification 8**: November 21, 2022, through December 2, 2022, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 72 hours.

**Specification 9**: December 5, 2022, through December 16, 2022, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 80 hours.

**Specification 10**: December 19, 2022, through December 30, 2022, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 72 hours.

**Specification 11**: January 3, 2023, through January 13, 2023, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 72 hours.

**Specification 12**: January 17, 2023, through January 27, 2023, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 72 hours.

**Specification 13**: January 30, 2023, through February 10, 2023, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 80 hours.

**Specification 14**: February 13, 2023, through February 24, 2023, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 72 hours.

**Specification 15**: February 27, 2023, through March 10, 2023, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 80 hours.

**Specification 16**: March 13, 2023, through March 24, 2023, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 80 hours.

**Specification 17**: March 27, 2023, through April 7, 2023, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 80 hours.

**Specification 18**: April 10, 2023, through April 21, 2023, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 80 hours.

3

**Specification 19**: April 24, 2023, through May 5, 2023, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 80 hours.

**Specification 20**: May 8, 2023, through May 19, 2023, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 80 hours.

**Specification 21**: May 22, 2023, through June 2, 2023, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 72 hours.

**Specification 22:** June 5, 2023, through June 16, 2023, you failed to report for duty. You did not receive approval for your absence. As a result, you were AWOL for 80 hours.

**Reason 2:** You failed to follow a management directive.

**Specification 1**: On December 19, 2022, you were provided a management directive to report for duty no later than Tuesday, December 27, 2022, or provide acceptable medical documentation to substantiate your continued absence. You failed to report to duty, and you failed to provide medical documentation.

**Reason 3:** You failed to accurately state your Federal tax liability.

**Specification 1**: You understated your tax liability on your 2018 Federal income tax return. Specifically, an underreporter contact revealed that you did not accurately state your Federal tax obligations. Your error resulted in an additional $2,583 in taxes due, not including penalties and interest.

**Reason 4:** You failed to timely pay your Federal tax liability by the applicable due date.

**Specification 1**: IRS records reflect your 2018 Federal income taxes were not full paid until October 18, 2021. Your tax account should have been full paid on or before April 15, 2019.

Your conduct seriously impairs the efficiency of the service. An organization cannot continue to operate in an efficient manner when employees are not available to perform their duties. In addition, you are expected to readily respond to the direction of your managers. Your absences, for which there is no foreseeable end in sight, is a burden which no employer can efficiently endure.

In proposing this action, I have reviewed and considered the IRS Manager's Guide to Penalty Determinations (Penalty Guide), Document 11500, revision dated 8/01/2012, located at http://publish.no.irs.gov/catlg.html and also available at the "Forms & Publications Repository" on the IRS Source. After reviewing the evidence and the 2012 Penalty Guide, related to Reason 1, I believe your misconduct is an Attendance Related Offense (specifically section a), which falls into the penalty range of a 1-day suspension to a 14-day suspension for a second offense. Related to Reason 2, I believe your

4

misconduct is a Failure to Follow Management Directive related offense, which falls into the penalty range of a Written Reprimand to a 14-day suspension for a second offense. Related to Reasons 3 and 4, I believe your misconduct is a Failure to Properly and Timely File and Pay Federal, State, or Local Taxes related offense (specifically sections b and c), which falls into the penalty range of a Letter of Reprimand to a 14-day suspension. However, given the behavior is egregious in nature and frequently repeated, I believe a penalty of removal is both reasonable and warranted to promote the efficiency of the service.

In proposing this action, I considered all relevant factors, including the Douglas Factors as listed in the Penalty Guide and IRM Exhibit 6.752.2-11. Specifically, I considered the following Douglas Factors as aggravating:

Nature and Seriousness of the Offense: Your misconduct is serious and egregious. Your frequent absence from work negatively impacts and delays the mission of Criminal Investigation. Additionally, it places an undue hardship on fellow employees within your team and site to handle the additional workload imposed by your absences. Your failure to follow managerial directives and tax compliance issues only serve to magnify the seriousness of your misconduct.

Employee's Job: You currently occupy a permanent, full-time position that needs to be filled on a full-time basis. The Agency cannot rely upon you to maintain regular attendance, causing many of your duties to be reassigned to other employees.

Disciplinary Record: Your prior disciplinary record includes a Letter of Reprimand (LOR), dated August 8, 2022, for failing to follow a management directive.

Clarity of Notice: In a letter dated December 15, 2022, you were warned of the possible consequences of your absences when you were provided with the management directive to return to duty. In addition, you were recently disciplined for engaging in this type of misconduct.

Potential for Rehabilitation: There is poor potential for rehabilitation. The above-cited aggravating Douglas Factors do not reflect that you would successfully rehabilitate yourself even after a suspension. Therefore, nothing less than a proposed removal is appropriate.

Adequacy of Alternative Sanctions: You have been absent from duty and charged AWOL since August 15, 2022. Management has no reason to believe you will return to regular duty and continue your employment with the Service. Therefore, alternatives other than removal would not be appropriate.

You have a right to the material relied on to support the action in this proposed notice. You may submit your written request for this information to Alicen Jones, Employee & Labor Relations (ER/LR) Specialist, via email to alicen.j.jones@irs.gov.

You have the right to answer both personally and in writing and to furnish affidavits and evidence in support of your answer. You may want to consider addressing the Douglas Factors, including any mitigating factors, in your oral and/or written reply. Your written

5

reply must be received by Shea Jones within 15 calendar days from your receipt of this letter. Should you desire an oral reply, you must request it within 7 calendar days from your receipt of this letter. Any written reply or request for an oral reply should be addressed to Shea Jones at Shea Jones@ci.irs.gov. You also have the right to be represented by an attorney or other representative. If otherwise in an active-duty status, you have a right to a reasonable amount of administrative time to review the material relied on in this matter, to secure affidavits, and to prepare an answer. For these purposes, you will be allowed a reasonable amount of administrative time as determined by management. In addition, you will be allowed administrative time to make an oral reply if you choose to do so. You must arrange with your supervisor for any use of administrative time. Furthermore, if you need additional administrative time (other than what was initially granted to you) to prepare a response, you must request and obtain approval for the additional time. A disallowance of additional time does not preclude you from preparing a response on your own time.

In addition, Treasury Policy and the Appropriations Act prohibit the IRS from making payments to employees under any type of bonus, award, or recognition program without first considering an employee's conduct.

If you wish the agency to consider any medical condition which you believe has contributed to this proposed action, please contact me. You will be provided with information concerning medical documentation requirements.

A final decision will not be made in this matter until your reply or replies have been received and considered or, if no reply is received, until after the notice period has passed. Any replies submitted by you will be given full consideration. You will be notified in writing of the final decision. You will be retained in a work status during the advance notice period.

Sincerely,

Bret R. Kressin
Deputy Director, Strategy
Resource Administration and Leadership
Criminal Investigation

ALERTS # 2023-9123

Receipt Acknowledged:

_____          _____
Employee's Signature                        Date

correspondence, memoranda, and internal management documents when within established guidelines or the Chief's known views.

2. **Delegated to:** Deputy Chief.

3. **Re-delegation:** May not be re-delegated.

## Criminal Investigation Deviation from Servicewide Delegation Order 6-29, Authority to Address Employee Performance or Conduct Issues

Criminal Investigation Deviation from Servicewide Delegation Order 6-29, Authority to Address Employee Performance or Conduct Issues. This Delegation Order addresses authorities for all IRS Criminal Investigation positions including positions covered by the Executive Misconduct Unit (EMU).

> **Authority:** To propose and/or effect all actions identified in Servicewide Delegation Order 6-29.
>
> **Delegated to:** The Chief, Criminal Investigation.
>
> **Redelegation:** The Chief, Criminal Investigation (CI), may redelegate this authority to managers in CI without restriction.
>
> **Sources of Authority**: Treasury Order: 102-01 (March 21, 2018), 5 USC 7106, 5 USC Chapters 43 and 75. Jeffrey J. Tribiano, Deputy Commissioner for Operations Support.

### MEDICAL DOCUMENTATION

The Agency **did not include** medical documentation and responses from the Appellant in the case file.  The Agency included the following in the Executive Summary for Alerts 2023-9123:

**Medical Condition Raised?** (Per 5 CFR 752.404, an employee may advise the agency that a medical condition(s) should be considered as the potential cause of the charged misconduct. The employee must provide supporting medical documentation in accordance with 5 CFR 339.104.)

X    Yes, a medical condition was raised. **Employee refuses to provide medical to substantiate.**

Removing the Appellant's medical documentation and not including it in the Agency file, Reason 1 in the removal letter cited in Tab 4b. See Tab 3 Removed Medical Letter and Tab 5 Agency Medical File.

a. This letter was provided to the Deciding Official Shea Jones.

b. The memo was requested from the Deciding Official Shea Jones by Alicen Jones to add to the case file.

c. Intentionally not including the Appellant's medical documentation and the signed memo.

d. Using **Wikisource.org** to remove the Appellant from Federal service and failing to show any other reason on the record to justify the Appellant's AWOL removal:

Per Executive Order 5396, which states in part, with respect to medical treatment of disabled veterans who are employed in the executive civil service of the United States, upon the presentation of an official statement from duly constituted medical authority that medical treatment is required, leave without pay may be granted in order for the veteran to receive such treatment. The granting of such leave is contingent upon the veteran giving prior notice of definite days and hours of absence required for medical treatment so that arrangements can be made for carrying on the work during the absence. However, you did not provide an official statement that medical treatment is required. MSPB Page 11 of 53.

a. See Tab2 Agency Wikisource Affidavit.

**FOH Request Exhibit D**

Violations of Law PPP 14 5 U.S.C 2302(b)(14) Medical Records: Under this section agency officials are prohibited from accessing the medical record of another employee or an applicant as part, or otherwise in furtherance, of another, prohibited personnel practice.

**No Legitimate Business Interest to access the Appellant's July 11, 2022, medical records**

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## ATLANTA REGIONAL OFFICE

| | |
|---|---|
| JENNIFER BUTLER,<br>　　　　Appellant, | DOCKET NUMBER<br>AT-0752-24-0022-I-1 |
| v. | |
| DEPARTMENT OF THE TREASURY,<br>　　　　Agency. | DATE: March 21, 2025 |

<u>Jennifer Butler</u>, Mobile, Alabama, pro se.

<u>Aryeh Rosenfield</u>, Atlanta, Georgia, for the agency.

### BEFORE
Sherry Linville
Administrative Judge

### INITIAL DECISION

On October 17, 2023, the appellant filed an appeal with the Atlanta Regional Office of the agency's decision to remove her from the position of Investigative Analyst, GS-1805-11, with the Internal Revenue Service (IRS) located in Mobile, Alabama. Appeal File (AF), Tab 1. The Board has jurisdiction over this appeal. *See* 5 U.S.C. §§ 7511(a)(1)(A), 7512(1) & 7513(d). The Zoom for Government hearing was conducted on April 4, 2024. AF, Tab 27 (Hearing Audio Recordings "HAR"). For the reasons set forth below, the agency's action is AFFIRMED.

agency's denial of the appellant's request for LWOP, and that the agency proved the charge by preponderant evidence. The agency's AWOL charge is SUSTAINED.

### Failure to Follow a Management Directive (Reason 2)

To prove a charge of failing to follow instructions, the agency must establish that: (1) the employee was given proper instructions, and (2) the employee failed to follow the instructions, without regard to whether the failure was intentional or unintentional. *Hamilton v. U.S. Postal Service*, 71 M.S.P.R. 547, 555–56 (1996). The agency provided a single specification, which indicates that the appellant was issued a management directive dated December 15, 2022,[2] to report to duty and/or provided medical documentation to substantiate her absences.

It is undisputed that the appellant did not respond to the letter or report to work. After reviewing the letter, I find that it did not direct the appellant to submit additional medical information, but it did in fact order her to report to work. Based on this information, I find that the agency proved this charge. Reason 2 is SUSTAINED.

### Tax Charges (Reasons 3 and 4)

The agency charged the appellant with understating her tax liability on her 2018 Federal income tax return by $2,583 (Reason 3) and failed to timely pay her tax liability in 2018 (Reason 4). Cierra Clark, Human Resources Specialist with Tax and Compliance Branch, testified that she researches and reviews noncompliance with IRS employee tax returns. HAR-Clark testimony. Referencing an account transcript, she affirmed that the appellant owed an additional $2,583 in tax liability and it was not paid on time. *Id.*; *see also*, Tab 4

---

[2] While the NOPR indicates that the management directive was dated December 19, 2022, that was a typographical error. AF, Tab 4 at 50. The letter was dated December 15, 2022. *Id.* at 43–44.

at 46-47. While the appellant disagrees with the conclusion of the agency's audit,[3] I find that the agency showed that these tax liabilities occurred, and that the appellant failed to comply with her legal obligation to comply. Reasons 3 and 4 are SUSTAINED.

Nexus

The agency must prove that there is a nexus, i.e., a clear and direct relationship between the articulated grounds for the adverse action and either the appellant's ability to accomplish her duties satisfactorily or some other legitimate government interest. *Ellis v. Department of Defense*, 114 M.S.P.R. 407, ¶ 8 (2010). All of the charged behavior affected and/or occurred at work. *Miles v. Department of the Navy*, 102 M.S.P.R. 316, ¶ 11 (2006) (finding it is well settled that there is sufficient nexus between an employee's conduct and the efficiency of the service where the conduct occurred at work). After considering the evidence, I find the agency proved a nexus between the conduct and the efficiency of the service.

Affirmative Defenses

Even if the agency meets its burden of proof on the merits of its decision, the decision may not be sustained if the appellant proves by preponderant evidence that: (1) in arriving at its decision, the agency committed harmful procedural error in the application of its procedures; (2) the decision was based on a prohibited personnel practice as described in 5 U.S.C. § 2302(b), including unlawful discrimination or reprisal; or (3) the decision was not in accordance

---

[3] The appellant submitted an IRS document concerning special tax considerations for veterans, disputing the results of the audit. *See* AF, Tab 21 at 426-27. The appellant also submitted an email where she is disputing the agency's findings. *Id.* at 436. Clark testified that the team reviewing the taxes will take any explanation provided by the employee and consider it. HAR-Clark testimony. Once they consider the explanation, they determine whether it is compliant and whether to refer to Labor Relations. *Id.* In this matter, I make no independent findings concerning whether the audit in and of itself was insufficient.

with the law. 5 U.S.C. § 7701(c)(2); 5 C.F.R. § 1201.56(b)(2)(i)(C), (c). The appellant bears the burden of proving her affirmative defenses by preponderant evidence. 5 C.F.R. § 1201.56(b)(2). Here, the appellant is alleging the agency committed a harmful error; failed to provide reasonable accommodation for her disability; and engaged in reprisal for prior EEO activity.

Harmful Error

Under 5 U.S.C. § 7701(c)(2)(A), an agency's decision may not be sustained if the employee shows harmful error in the application of the agency's procedures in arriving at such decision.   Harmful error is error by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *See Scott v. Department of Justice*, 69 M.S.P.R. 211, 242 (1995), *aff'd*, 99 F.3d 1160 (Fed. Cir. 1996) (Table).   Reversal of an action is warranted only where a procedural error, whether regulatory or statutory, is likely to have had a harmful effect upon the outcome of the case before the agency. *Id.* The following were accepted as claims of harmful error:

1. Three-year Statute of Limitations for the tax offenses.
2. Using Wikisource.org to effectuate the appellant's removal.
3. Dorsey and other managers attempted to access the appellant's medical records in violation of 5 U.S.C. § 2302(b)(14).
4. The tax charges are not in accordance with agency policy on non-Section 1203(b)(9) offenses.
5. Delegation Order 6-29 was violated in processing her removal.

AF, Tab 24.

*Statute of Limitations*

The appellant submitted a document distributed to the public that indicates the general rule, with some exceptions, is that the IRS will not audit an individual's tax returns more than three years after they were filed. *See* AF, Tab 21 at 414-25. The appellant has not shown that this general policy applies to the

agency's employees. Thus, I find that the appellant did not show harmful error as to the time of the audit.

*Wikisource.org*

The appellant asserts that the language the agency used to describe the requirements for Executive Order 5396, *i.e.*, "upon the presentation of an official statement from duly constituted medical authority that medical treatment is required," is only found on Wikipedia and not in an agency policy.[4] Even assuming that the appellant is correct that this language is not contained in an IRS policy, it is consistent with OPM's guidance on Executive Order 5396 and the Executive Order itself. Thus, I find that the appellant did not show harmful error regarding the language used for Executive Order 5396.

*Access of Medical Records*

The appellant asserts that her supervisor violated 5 U.S.C. § 2302(b)(14) when he attempted to access her medical records. It is undisputed that her supervisor attempted to get additional information concerning her medical status from the Reasonable Accommodation Coordinator. *See* AF, Tab 26 at 129. It is also undisputed that he was not allowed access. *Id*. Thus, I find that no error occurred as alleged by the appellant.

*Tax Charges*

The appellant did not explain how the agency violated its own policy regarding the tax charges. HAR-Butler testimony. Both Clark and Kressin testified that the agency followed its protocol when bringing the action against the appellant. HAR-Clark and Kressin testimonies. Thus, I find the appellant did not show that the agency committed an error when it brought the tax charges against her.

*Delegation Order 6-29*

---

[4] The quoted language is found in the agency's letter granting provisional LWOP dated June 16, 2022. *See* AF, tab 26 at 19-20.

Under Delegation Order 6-29 the authority to address Criminal Investigation employees' performance or conduct issues is delegated to the Chief, Criminal Investigation. AF, Tab 21 at 625. The appellant asserts that this policy prohibits redelegation of this authority as was done in her case. *Id.* at 12. However, the policy states that the Chief "may redelegate this authority to managers in CI without restriction." *Id.* at 265. Thus, I find that the appellant did not show that an error was made.

Reasonable Accommodation

The appellant argues that the agency failed to provide her with reasonable accommodation for her disability. Specifically, she indicated that the agency's revocation of her telework and refusal to grant her LWOP was a failure to accommodate her disability. The Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act of 1973. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 35. The standards under the Americans with Disabilities Act (ADA), as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), have been incorporated by reference into the Rehabilitation Act, and the Board applies them to determine whether there has been a Rehabilitation Act violation. *Id.*; 29 U.S.C. § 791(f).

To establish a prima facie case of disability discrimination based on a failure to accommodate, the appellant must show:

(1)    that they are an individual with a disability under 29 C.F.R. § 1630.2(g) and that the action appealed to the Board was based upon their disability; and

(2)    that they are a qualified individual with a disability; that is, that they satisfy the requisite skill, experience, education, and other job-related requirements of the position they hold or desire and can perform the essential functions of the position with or without reasonable accommodation.

 **IRS:CI**

# APPENDIX D: DB Case

April 2023

**Clear Form**

## Recommendation

SUBJECT NAME: Jennifer Butler

ALERTS NUMBER: 2023-9123

Recommendation

On 05/17/2023 , the Discipline Board convened to review the case of subject named above. Based upon the facts and circumstances contained in the evidence file, the DB agreed to propose : Removal .

The IRS Manager's Guide to Penalty Determination (Document 11500) was reviewed, and the following was considered:
Nature of Offense: AWOL, Failure to Follow Directives, Tax Related Offenses.

second offense .

Douglas Factors
In considering the discipline listed above. The Disciplinary Board considered the Douglas Factors in their entirety and found the following factors Aggravating in this case:

Nature and Seriousness of the Offense: Your misconduct is serious and egregious. Your frequent absence from work negatively impacts and delays the mission of Criminal Investigation. Additionally, it places an undue hardship on fellow employees within your team and site to handle the additional workload imposed by your absences. Your failure to follow managerial directives and tax compliance issues only serve to magnify the seriousness of your misconduct.

Employee's Job: You currently occupy a permanent, full-time position that needs to be filled on a full-time basis. The Agency cannot rely upon you to maintain regular attendance, causing many of your duties to be reassigned to other employees.

Disciplinary Record: Your prior disciplinary record includes a Letter of Reprimand (LOR), dated August 8, 2022, for failing to follow a management directive.

Clarity of Notice: In a letter dated December 15, 2022, you were warned of the possible consequences of your absences when you were provided with the management directive to return to duty. In addition, you were recently disciplined for engaging in this type of misconduct.

Potential for Rehabilitation: There is poor potential for rehabilitation. The above-cited

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

CRIMINAL INVESTIGATION

June 27, 2023

Employee's written response to ALERTS # 2023-9123

Affirmative Defense: The agency action will not be sustained if the employee was harmed by the agency's failure to follow procedures, if the agency decision was reached as a result of the commission of a prohibited personnel practice, or if the decision is otherwise not in accordance with the law.

1. LWOP is an entitlement for a disabled veterans needing treatment for a service-connected disability.
2. From July11-Aug8, 2022, I took 54 hours of leave. I took Pocket Commission Training 1.5 hours day of notice one. I was on approved leave on notice 2 and notice 3. I was on approved leave the day my credit card was lowered to $1 dollar.
3. The agency is not allowed to fire me for asserting my rights in the workplace.
4. If I am engaged in any protected activity or took steps to protect my rights, the agency is not allowed to retaliate against me in any way, up to and including termination.
5. A false accusation made by my supervisor SIA Angela Harris, is a pretext to fire me, all the reasons listed after the false statement, which I can prove, cannot be used for termination.
6. Defamatory untrue statements that damage my career and reputation and stopped my ability to qualify for disability retirement were signed by SIA Angela Harris.
7. Perjury is a serious crime and individuals who lie while their honesty is being relied upon in an official matter is against the law.
8. Retaliation is unlawful I am entitled to file a complaint based on my civil rights and protections afforded to me by Title VII of the Civil Rights Act of 1964 and other federal laws that govern employment practices.
9. Any termination that occurs after I filed my EEOC complaint should be for reasons unrelated to my EEOC filing, and it's the agency responsibility to ensure there is no causal relationship between the EEOC filling and the employee's termination.
10. Management should have informed you that Reason 1 and 2 is directly related to my EEOC complaint as while as the management directive and the Letter of Reprimand.
11. 29 CFR 1614.203 which requires reasonable accommodation for a qualified individual with a disability, my denial was not in accordance with the law and the pretext was a false statement from SIA Angela Harris and SAC James Dorsey.
12. My Disciplinary Record is directly related to my EEOC claim.
13. The Nature and Serious of the Office is directly related to my EEOC claim.

14. Employee's Job: reassigning of duties is directly related to my EEOC claim
15. Adequacy of Alternative Sanctions is directly related to my EEOC claim.
16. The agency cannot clarity notice. Notice was not given for any of the reasons listed:
    a.  Reasons 1: You were absent without leave (AWOL)
    b.  Reasons 2: You failed to follow a management directive
    c.  Reasons 3: You failed to accurately state your Federal tax liability
    d.  Reasons 4: You failed to timely pay your Federal tax liability
        i.  I am requesting and the agency is required to prove to me in accordance with Title 5, Part 752 of the Code of Federal Regulations (CFR):
            1.  A copy of the Notice of the prosed action for Reasons 1, 2, 3, and 4.
            2.  My written reply to the actions prosed in Reasons1, 2, 3, and 4.
            3.  A copy of Notice of Decision finding that I did not receive approval for my absence resulting in me being changed AWOL Reasons 1.
            4.  A copy of Notice of Decision finding that I failed to follow a management directive on August 2, 2022, and December 19, 2022, Reason 2.
            5.  A copy of Notice of Decision finding that I failed to accurately state my Federal tax liability Reason 3.
            6.  A copy of Notice of Decision finding that I failed to timely pay my Federal tax liability by the applicable due date Reason 4.
            7.  Any order effecting my suspension from telework, my termination from Federal service, finding me AWOL, involving the management directives, together with any supporting material used to reach the conclusions in Reason 1, 2, 3, and 4.


Evidence:

**Taxes:** In accordance with Publication 525 certain military and government pensions aren't taxable. If you receive the disability payments for a combat-related injury. I was 100% medically retired from the US Army May 15, 2015, for asthma. My HR file listed my disability as asthma. My VA file list my injury as service-connected Iraq. I overpaid my taxes. I correctly didn't claim this as income. After receiving the notice, I paid and started the process to correct my status with DFAS. Since that time the PACT Act was passed, and my injury was certified as combat related and I have received additional benefits the right to back pay for taxes paid. I received a payment from the US Army of $30,000. My email response stating this was not included in materials you gave me please see emails:
1. Butler 2018 Tax Account
2. The fact finding found, "The employee has not demonstrated any intent to violate their know legal duty, therefore, the employee is not willful with regards to the potential 1203(b)(9) outlined above.

3. The CI Disciplinary Board found in my favor how can you use this as evidence of misconduct to support removing me from service.

**AWOL:** An AWOL charge may be changed later to an appropriate type of leave if the appropriate authority determines that the employee has satisfactorily explained the absence or presented acceptable documentation.

On July 11, 2022, I provided management a letter from my mental health provider showing that treatment was necessary and would be long term. Establishing my entitlement to LWOP as a service-connected disable veteran. On August 8, 2022, I gave notice to management that I needed to continue treatment of the same service-connected disability and would provide an updated treatment plan. I started LWOP on August 9, 2022. On August 10, 2022, management called my personal cellphone and I informed management that I was having a mental breakdown and that management was being unreasonable asking for a new letter before I could take leave to continue treatment of my service-connected disability that I had verified with a letter from my mental health provider, a letter from the VA, and a letter from the US Army certifying that it was a combat injury. I was on LWOP for three days on the fourth workday management charged me as AWOL. In what world is this a reasonable response to an employee who told you they are having a mental breakdown and had already told you she would give you an updated treatment plan for a verified disability. Please refer to the medical documentation showing that I am unable to work due to stress and still in treatment. On October 27, 2022, I asked management to explain what medical documentation was need for my reasonable accommodation that management had already denied, why management had waited 3 months after I submitted my medical documentation to ask for an FOH assessment, and management refused to reply (email from James Dorsey to Shaun Harris). Also, management **did not** provide all the emails only the ones to support their narrative. I submitted them all as evidence with my EEOC complaint. I requested extended LWOP to apply for disability retirement and complete my EEOC complaint and management refused to consider my request.

**Am I AWOL or on LWOP?** I notified SIA Angel Harris on December 2, 2022, that I was going to apply for SSDI and disability retirement and that I would email later with a leave request. I also informed her that I was going to end my job search to apply for disability retirement. SIA Harris changed my status from AWOL to LWOP. Then signed my Supervisor's Statement saying I was on LWOP and had been granted 65 days of annual leave, 26 days of sick leave, and 1,088 days of LWOP by management for apparent medical leave. However, SIA Harris changed my status back to AWOL and submit documents showing me as AWOL since August 13, 2022, in and she gave you my signed statement but not her signed statement. See Leave Record 12-07-2022 and Retirement-Butler 12-5-2022, that has her signed Supervisor's Statement.

**PERJURY**
Perjury is a serious crime and individuals who lie while their honesty is being relied upon in an official matter is against the law. I expect SIA Angel Harris to be charged for

4

making false statements and management to be charged with Retaliation for submitting a false narrative as grounds for termination before my court hearing in my EEOC case. A false statement was used as the pretext to deny my reasonable accommodation request.

_____      _____
Employee's Signature                         Date

**Attachments:**
1. Butler 2018 Tax Account
2. Leave Record 12-07-2022
3. Leave Record 01-10-2023
4. Retirement-Butler 12-05-2022